WILLIAM S. WILLIAMS, Respondent, *v*. THE WESTERN UNION TELEGRAPH COMPANY, Impleaded, etc., Appellant.

The term " capital stock," in the provision of the Revised Statutes (1 R. S. 601, § 2) prohibiting the directors of a corporation from making dividends, except from the surplus profits of a corporation, or from dividing, withdrawing or in any way paying to the stockholders " any part of the capi-

tal stock of such company," means the property of the corporation, con-
tributed by the stockholders or otherwise obtained, to the extent
required by its charter.   The object of the provision was to prevent a
withdrawal of the property which would reduce the value of its assets
below the sum limited for its capital in its charter or articles of associa-
tion.

When the property of the corporation exceeds that limit, the excess is sur-
plus, which may be divided among the stockholders, either in money
or property.

Where also a corporation has accumulated such a surplus and an increase
of its share capital has been lawfully authorized, a dividend of shares
is not prohibited by said provision ; and where such a dividend does
not exceed in amount the amount or value of the surplus, it is not in
conflict with any principles of public policy.

The directors of defendant, the W. U. T. Co., entered into a contract with two
other telegraph companies, each operating lines nearly parallel, but
extending to places not reached by the lines of either of the other com-
panies, by which contract said defendant agreed to purchase and the other
companies to convey to it all their property, rights, privileges and
franchises.   The capital stock of the W. U. T. Co. was at that time
$41,073,410.   · It was agreed that it should take steps to increase its capi-
tal to $80,000,000, the addition to be used as follows : $15,526,590 as a
dividend to its then stockholders, and $23,400,000 in payment for the
property and interests so transferred.   The agreement was approved at a
meeting of the stockholders of the W. U. T. Co., and the increase of its
capital stock duly authorized as prescribed by the acts providing for the
incorporation of telegraph companies. (Chap. 265, Laws of 1848, as
amended by chap. 98, Laws of 1851 ; chap. 471, Laws of 1853 ; chap.
425, Laws of 1862 ; chap. 568, Laws of 1870 ; chap. 319, Laws of 1875.)
In an action brought by a stockholder to test the validity of and restrain
the carrying out of said agreement it was found that the value of the
property, rights and interests purchased was equal to the par value of
the stock to be paid therefor, and that the W. U. T. Co. owned and pos-
sessed, at the time, over and above its then capital, property equal
in value to the amount of the stock dividend ; that the object of the
agreement was to extend and perfect the telegraph systems established
by the companies, and no fraud or collusion was found.   *Held*, that the
purchase and the stock dividend were valid and lawful.

The complaint alleged that the property purchased was much less in value
than the amount of stock issued in payment therefor.   The directors of
the W. U. T. Co. were made parties defendant, and judgment was asked
against them individually for the amount the stock payment exceeded
the value of the property, and for the amount of the stock dividend in
case it had been issued and distributed.   The corporation alone ap-
pealed from the order of the General Term which reversed the judgment
in favor of defendants and granted a new trial, giving the prescribed

stipulation (Code, § 191, subd. 1), for judgment absolute in case of affirmance. *Held*, that the appeal was proper.

Where a judgment in favor of defendants, whose liability as alleged in the complaint is several, not joint, and who answer separately, is reversed on appeal to the General Term, one of the defendants may alone appeal to this court.

*People, ex rel. Judson,* v. *Thacher* (55 N. Y. 525), distinguished.

As to whether this is so, where the defendants are jointly interested in the defense, *quære*.

(Argued June 8, 1883; decided October 2, 1883.)

APPEAL by defendant, the Western Union Telegraph Company, from order of the General Term of the Superior Court of the city of New York, made November 6, 1882, which reversed a judgment in favor of defendants and granted a new trial.

The nature of the action and the material facts are stated in the opinion.

*Wager Swayne, Wm. M. Evarts* and *A. J. Vanderpoel* for appellant. The plaintiff must show some violation of a peremptory statute to enable him to maintain his action. (*Kent* v. *Quicksilver M. Co.,* 78 N. Y. 159, 185; *Hawes* v. *Oakland,* 104 U. S. 450, 456, 461; *Danumeyer* v. *Coleman,* 9 Fed. Rep. 97.) A corporation is a creature of the State, and must find statutory warrant for its course, but not necessarily strict statutory warrant for the method by which it has pursued that course. (Laws of 1872, chap. 611; Laws of 1875, chap. 319; *Hatch* v. *Am. Union Tel. Co.,* 9 Abb. N. C. 228.) Capital stock is the property which has been contributed by the shareholders to the corporation originally as capital and referred to in the articles of association, and as to which affidavits are required that it has been paid in, and which is not to be withdrawn so as to prejudice creditors, and is expressly distinguished by this fund from those accretions which are "surplus profits." These remain the subject of lawful distribution. (1 R. S. [Edm. ed.] 558, tit. 4, chap. 18, part 1, § 2; 1 R. S. 414, §§ 1, 2, subd. 2; § 6, subd. 1; 1 R. S. [Edm. ed.], 600, § 1, p. 557;

Edmonds' Stat. [1st ed.], appendix, 280 ; [2d ed.] 528 ; § 10 of the Manuf. Act of 1848 [3 Edmonds' Stat.], p. 735 ; act of 1849, chap. 308, §§ 6, 19, 21 ; *State* v. *Morristown Fire Ass'n,* 3 Zabr. 195, 196 ; *Burrall* v. *Bushwick R. R. Co.,* 75 N. Y. 211, 216 ; *Farrington* v. *Tennessee,* 95 U. S. 686, 687 ; Field on Corp., § 123 ; Angell & Ames on Corp., § 151 ; *Barry* v. *Merchants' Ex. Co.,* 1 Sandf. Ch. 280, 397 ; *Lycoming* v. *Gamble,* 47 Penn. St. 106, 110.) The issuing of the " stock dividend " provided for, based upon " surplus profits," which, instead of having been paid each year to the stockholders, as they lawfully might have been, have been incorporated in the plant of the company, is a lawful exercise of the power of the board of directors in the management of the internal affairs of the company. (*Howell* v. *C. & N. W. Railway,* 51 Barb. 378 ; *Canton Furnace Co.* v. *McAlpine,* 5 Fed. Rep., No. 9, p. 743 ; *Barton's Trust,* L. R., 5 Eq. 239 ; *Miner* v. *Payne,* 99 Mass. 101 ; *Rand* v. *Hubbell,* 115 id. 461 ; Morawetz on Private Corp., § 349 ; *Commw.* v. *Pittsburgh, etc., Ry. Co.,* 74 Penn. St. 83, 89 ; *Howell* v. *C. & N. W. R. R. Co.,* 51 Barb. 378 ; *Terry* v. *Eagle Lock Co.,* 47 Conn. 141, 165 ; *Mills* v. *N. Ry. of Buenos Ayres Co.,* L. R., 5 Ch. App. 621, 632 ; *People, ex rel. W. Gas L. Co.,* v. *Assessors,* 16 Hun, 198 ; 76 N. Y. 206 ; *H. & N. H. R. R. Co.* v. *Crosswell,* 5 Hill, 383 ; *Lohman* v. *N. Y. & E. R. R. Co.,* 2 Sandf. 39 ; *Lightfoot* v. *E. N. Y. & J. R. R. Co.,* 5 Abb. [N. S.] 558 ; *Minot* v. *Pain,* 96 Mass. 111 ; Pierce on Railroads, 123 ; *Barton's Trust,* Law Rep., 5 Eq. Cas. 238 ; *Brander* v. *Brander,* 4 Ves. 800 ; *Clarkson* v. *Clarkson,* 18 Barb. 647 ; *Stoddard* v. *Shetucket Foundry Co.,* 34 Conn. 542, 545 ; *Lighthall* v. *E. N. Y. & J. R. R.,* 5 Abb. [N. S.] 458 ; *B. & L. R. R.* v. *Commw.,* 100 Mass. 399 ; *Doland* v. *Williams,* 101 id. 571 ; *Leland* v. *Hayden,* 102 id. 542 ; *Earp's Appeal,* 28 Penn. St. 368.) Mistake or ignorance of the law forms no ground of relief for contracts fairly entered into with full knowledge of the facts. (*B'k of U. S.* v. *Daniel,* 12 Peters, 56 ; Pollock's Principles of Contracts, 395, 397, 398 ; *B'k of U. S.* v. *Daniel,* 12 Peters, 52, 56.) Under the contention most favorable to

plaintiff the dividend stock is not void stock, but at most is stock issued contrary to law, property of the company, for an illegal consideration. (1 Lindley on Partnership, 136 ; *Miller* v. *Ill. Cent. R. R. Co.*, 24 Barb. 330.) Such stock becomes entirely valid in the hands of a *bona fide* purchaser. (*Brant* v. *Ehlen*, 14 Cent. Law Jour. 451–2 ; *N. Y. & N. H. R. R. Co.* v. *Schuyler*, 34 N. Y. 80 ; 1 Story's Eq. Jur., § 409, p. 393 ; *Mornyer* v. *Cooper*, 35 Iowa, 260 ; *Hereth* v. *M. N. B'k*, 34 Ind. 348 ; *Johnson* v. *Lofftin*, 5 Dill. C. C. 75 ; *Howell* v. *C. & N. W. R. R.*, 51 Barb. 381 ; *Miller* v. *Ill. Cent. R. R. Co.*, 24 id. 312 ; Pierce on Railroads, 132 ; *Dudley* v. *Mayhew*, 3 Comst. 15 ; *Smith* v. *Lockwood*, 13 Barb. 217 ; *Wetmore* v. *Tracy*, 14 Wend. 255 ; *Almy* v. *Harris*, 5 Johns. 175 ; *Sparhawk* v. *Union Passenger Ry. Co.*, 54 Penn. St. 401.) A *bona fide* purchaser of one of the full-paid certificates, duly indorsed and delivered, acquires a title good against equities between the corporation and the seller. (1 Lindley on Partnership, 142 ; *Holbrook* v. *N. J. Zinc Co.*, 57 N. Y. 632 ; Dos Passos on Stock Brokers, 599 ; *Comm'rs of Marion Co.* v. *Clark*, 94 U. S. 285 ; High on Inj., § 1123 ; *Thorp* v. *Woodhull*, 1 Sandf. Ch. 414–416 ; *Shipley* v. *Mechanics' Bk.*, 10 Johns. 414 ; *T. & B. R. R. Co.* v. *B. H. T. & W. R. R.*, 16 N. Y. 125 ; *Marshall* v. *Vicksburg*, 15 Wall. 149 ; *Livingston* v. *Tompkins*, 4 Johns. Ch. 431.) Private parties cannot invoke the chancery powers of the courts only for the redress of private injuries done or threatened. (*Sparhawk* v. *Union Pass. R. R.*, 54 Penn. St. 401.) Title to certificates of indebtedness passes by manual delivery, and although issued in the first place to stockholders, they may, by sale, become separate from the stock and pass into the hands of those not stockholders. (*Brundage* v. *Brundage*, 60 N. Y. 544.) It is only the rights and privileges conferred by the United States Revised Statutes that cannot be transferred. (U. S. R. S., § 5265.) The law of Ohio is inapplicable to any but Ohio companies. Nor does it forbid consolidation. (Ohio R. S. [1880] 3470, 3381.) An agreement in violation of the revenue laws of another State will not be treated as invalid by our courts.

(*Ludlow* v. *Van Rensselaer*, 1 Johns. 94; *Holman* v. *Johnson*, Cowper, 341, 343.) The burden rests upon the plaintiff to show that on a comparison of his interest and the interest of others to be affected, there is a balance of convenience in favor of granting the injunction. (2 High on Inj. [2d ed.] 743, § 1136; *Child* v. *Douglas*, 5 De G., M. & G. 741; *Winkinson* v. *Rogers*, 12 W'kly Rep. 284; 2 Dan. Ch. Pr. 1640.) The plaintiff is estopped by his silence from the 19th of January or 3d of February. (*Contl. Bk.* v. *Bk. of Commonw.*, 50 N. Y. 575; *Voorhis* v. *Olmstead*, 66 id. 113.) If the plaintiff ever had any claim to equity relief he had forfeited it by his acquiescence. (*Grey* v. *O. & P. R. R. Co.*, 1 Grant's Cas. 412; *Kent* v. *Quicksilver Co.*, 78 N. Y. 169, 184; *Terry* v. *Eagle Lock Co.*, 47 Conn. 141; *Hilton* v. *Granville*, Craig & Phil. 292; *Graham* v. *B. R. R.* 2 H. & T. 450, 456; *Williams* v. *Lord Jersey*, Craig & Phil. 91, 97; Hilliard on Inj. 34; *Tash* v. *Adams*, 10 Cush. 253; 2 Story's Eq. 959; *Dublin* v. *Caldwell*, 28 Ga. 117; *Gregory* v. *Patchett*, 33 Beav. 602; *Chapman* v. *R. R. Cos.*, 6 Ohio St. 136; *Bunney's Case*, 2 Bland. 104.) The dividend having been partly paid in certificates, plaintiff cannot compel repayment. He cannot enjoin the stockholders who claim these certificates from suing to recover them. They are not before the court. Under such circumstances the court will not enjoin the payment of a dividend already declared. (*Carlisle* v. *S. E. R. Co.*, 1 MacN. & G. 689, 698; *Fawcett* v. *Laury*, 1 D. & S. 192.) A man who buys a piece of property succeeds to all the interests of the owner by virtue of that transfer. (*McKee* v. *Judd*, 2 Kern. 622; *Waldron* v. *Willard*, 17 N. Y. 466; *N. Y. & H. R. R.* v. *Schuyler*, 34 id. 30, 80; *Burroughs* v. *N. C. R. R.*, 67 N. C. 376.) A moral or equitable obligation, as between the parties, is a valued consideration for an executed contract. (1 Parsons on Contracts [5th ed.], 431, 432; *St. N. Ins. Co.* v. *Howe*, 7 Bosw. 450, 460; *Seymour* v. *Wilson*, 19 N. Y. 417, 419.) Even as against creditors, an antecedent indebtedness is a valid and sufficient consideration for a grant. (*Toulsey* v. *McDonald*, 32 Barb. 604.) If there was any

ground for overturning the agreement in its entirety the proper parties are not before the court. (*Holyoke* v. *Shrewsbury R. R. Co.*, 5 Eng. Ry. Cas. 421, 427.) All powers of a corporation, so far as the internal management of the business is concerned, are conferred upon the board of directors. (Redf. on Railways, 840 ; *Como* v. *Port Henry*, 12 Barb. 27.) The plaintiff should satisfy the court that he has sustained substantial damage from the violation of a legal right, to entitle himself to an injunction. (Wait's Actions and Defenses, § 1 ; *Spooner* v. *McConnell*, 1 McL. 338 ; *Jerome* v. *Ross*, 7 Johns. Ch. 231 ; 2 Sandf. 188, 189 ; *Quicksilver Mining Co.*, 78 N. Y. 185, 186, 187 ; 63 id. 63 ; Kerr on Injunctions, 226 ; *Spottiswoode* v. *Clarke*, 2 Phillips, 156 ; 96 N. Y. 207 ; *Van Cott, Receiver in Van Brunt*, 11 W'kly Dig. 200 ; *Forrest* v. *Manchester Ry. Co.*, 9 W'kly Rep. 118.) Having delayed until the contract had become an executed one plaintiff can only stand in the position in which the Western Union Company would stand, if, after having so carried out the agreement, they had sought to upset it. (*Terry* v. *Eagle Lock Co.*, 47 Conn. 141.) The State alone can raise the question whether the corporate stock had been properly increased. (*Pullman* v. *Upton*, 96 U. S. 328, 329.) The order is appealable, as it does not appear from the face of the complaint that the plaintiff is entitled to the final relief for which the action is brought. (Code, § 603 ; *McHenry* v. *Jewett*, 26 Alb. L. J. 411 ; *Collins* v. *Collins*, 71 N. Y. 269.; *Allen* v. *Meyer*, 73 id. 1 ; *Wright* v. *Brown*, 67 id. 1 ; *Fredericks* v. *Mayer*, 1 Bosw. 227, 242 ; *Osborn* v. *Taylor*, 5 Paige, 515 ; *Brown* v. *Newall*, M. & C. 570.) It being entirely within the power of the corporation to divide this stock, unless some right to restrain it may exist under the statute, it follows that any such right is in that sense a new right arising exclusively from the statute. For any breach of its provisions, the statute provides its own remedy. It is not open to the courts to qualify such exercise of legislative will. (*Dudley* v. *Mayhew*, 3 Comst. 15 ; *Smith* v. *Lockwood*, 13 Barb. 217 ; *Wetmore* v. *Tracy*, 14 Wend. 255 ; *Almy* v. *Harris*,

5 Johns. 175 ; *McCaffrey* v. *Mayor*, 27 How. 342 ; *Davidson* v. *Mayor*, id. 342 ; *City of Camden* v. *Allen*, 2 Dutcher, 398 ; *Renwick* v. *Morris*, 7 Hill, 575 ; *B'k of Niagara* v. *Johnson*, 8 Wend. 652 ; *People* v. *Green*, 1 Hun, 1 ; *Smith* v. *Lockwood*, 13 Barb. 200 ; 1 Lindley on Part. 136 ; *Scoville* v. *Thayer*, 105 U. S. 143 ; *Miller* v. *Ill. C. R. R. Co.*, 24 Barb. 330.) Equitable facts may exist which would lead the court to restrain the declaration of a dividend, but not the payment after it had been declared. (*Carpenter* v. *N. Y. & N. H. R. R.*, 5 Abb. Pr. 277 ; *Carlisle* v. *S. E. Ry. Co.*, 1 M. N. & G. 689 ; *Marion Co.* v. *Clark*, 94 U. S. 285.)

*Robt. Sewell, John Sessions, A. P. Whitehead* and *R. W. Russell* for respondent. A stockholder of an incorporated company has the legal right to obtain an adjudication that an unlawful act of directors and trustees made in the name of the company is a breach of trust, and that it shall not be carried into effect. (*Hoole* v. *G. W. R. R.*, L. R., 3 Ch. App. 262 ; *Dodge* v. *Woolsey*, 18 How. [U. S.] 341 ; *Clearwater* v. *Meredith*, 1 Wall. 25 ; *Mott* v. *Penn. R. R.*, 30 Penn. St. 1 ; *Manderson* v. *Comm. B'k of Penn.*, 28 id. 379 ; *Cunningham* v. *Pell*, 5 Paige, 607 ; *Beman* v. *Rufferd*, 1 Simons [N. S.], 550 ; *Dodge* v. *Woolsey*, 18 How. [U. S.] 341 ; *Gray* v. *N. Y. & Va. R. R.*, 5 T. & C. 224 ; *Kent* v. *Quicksilver Mining Co.*, 78 N. Y. 159.) When the board of directors pay what ought to be charged to capital out of revenue, those persons who are looking for their payment out of revenue, and who have not authorized the diversion of net earnings, may demand the credit back to revenue of those things which have been carried for the time to capital account. (*Mills* v. *N. R. of Buenos Ayres Co.*, L. R., 5 Ch. App. 621.) The number of shares of capital stock cannot be increased when the company's charter limits the amount of the capital. (*Scovill* v. *Thayer*, 105 U. S. 143.) The power to increase the capital stock of the company did not include the power to so increase it for the purpose of giving it away. (*Weaver* v. *Barden*, 49 N. Y. 286 ; *Barnes* v. *Brown*, 80 id.

534; Green's Brice's Ultra Vires, 142; *Upton* v. *Tribilcock*, 1 Otto, 45.) The act of 1870 (Chap. 568), authorizing the issue and delivery of shares of stock in payment for property, did not authorize the issue and delivery of stock for another purpose, viz., for distribution as a stock dividend amongst the stockholders of the purchasing company. (*Scovill* v. *Thayer*, 105 U. S. 143; *N. Y.* v. *Schuyler*, 34 N. Y. 30, 49.) A telegraph company, incorporated under the laws of the State, is prohibited from making stock dividends, and also from distributing shares of stock amongst its stockholders. (2 R. S. [5th ed.] 599, § 2; id. [7th ed.] 1533, § 2.) The proposition that the statute, prohibiting the making of stock dividends, provides a penalty for the infraction of the law, and that that is the only remedy, is unsound. (*Livingston* v. *Van Ingen*, 9 Johns. 507.) Stock issued under the pretended authority of the act of 1870 for a purpose not designated by it, would be a nullity for want of legal authority to create it, just as stock issued by a company beyond the amount limited by its charter is absolutely void. (*Scovill* v. *Thayer*, 105 U. S. 143; *N. Y.* v. *Schuyler*, 34 N. Y. 30, 49.) Plaintiff had the right to obtain an order discontinuing a prior action brought by him in the Supreme Court. (*Averill* v. *Patterson*, 10 N. Y. 500.) Nothing short of an absolute judgment or decree amounts to an estoppel by adjudication. (*Howell* v. *Mills*, 53 N. Y. 322.) Even if there had been an enactment applicable to this case it would not deprive a stockholder of the right to retain his stock and insist that the public policy of the State in relation to stock watering shall not be violated, and that the company's share of stock shall not be unlawfully paid out to other companies in violation of the terms of a contract made with them. (*Mott* v. *Penn. R. R.*, 30 Penn. St. 23.) As there never was any valid contract, the court cannot make a new contract for the parties to the invalid one. (*Thomas* v. *R. R. Co.*, 101 U. S. 71.) When an incorporated company violates its charter, or a statutory prohibition or legal principle by issuing shares of its stock which it has no legal right to issue, a court of equity has jurisdiction to enjoin the payment of dividends

on such stock and to enjoin the holders of it from voting on it. (*Quicksilver Case*, 78 N. Y. 139; *Gray* v. *N. Y. & Va. R. R.*, 5 T. & C. 224; *Thomas* v. *R. R. Co.*, 101 U. S. 71.) The Code does not give this court jurisdiction to hear an appeal from an order for a new trial where the stipulation required by the Code, section 191, subdivision 1, will be inoperative. (*People* v. *Thatcher*, 55 N. Y. 537.) The provision of the Code as to extra allowances may be construed and applied in proper cases as meaning the value of the matter or subject of litigation. (Code of Civil Procedure, § 3253, subd. 2.) In an action for an injunction, when it is impossible to ascertain a money basis upon which to calculate a percentage, no allowance can be made under section 309 of the Code. (*Spofford* v. *Texas Land Co.*, 41 N. Y. Sup. Ct. 228; *Weaver* v. *Ely*, 83 N. Y. 89.) The order appealed from is not appealable. (*Vandewater* v. *Kelsey*, 47 N. Y. 469, 473; *People* v. *Schoonmaker*, 50 id. 499; *Pfhol* v. *Sampson*, 59 id. 174, 176; *Calkin* v. *Manhattan Oil Co.*, 65 id. 557; *Young* v. *Campbell*, 75 id. 525; 2 High on Injunctions [2d ed.], § 1693.) Corporations cannot increase their capital stock for the purpose of gratuitously distributing the additional shares amongst the stockholders, that being an unlawful purpose. (*Weaver* v. *Barden*, 49 N. Y. 286; *Barnes* v. *Brown*, 80 id. 534; Green's Brice's Ultra Vires, 142; *Upton* v. *Tribilcock*, 1 Otto, 45.) The issue of the stock being prohibited, such stock is illegal and void. (*Livingston* v. *Van Ingen*, 9 Johns. 507.) A telegraph company, incorporated under the laws of this State, cannot increase the number of shares of its capital stock, to be distributed amongst its present stockholders as a stock dividend, to represent net earnings, which the board of directors have for a series of years applied to increase the extent of its telegraph line, purchases of patent rights, etc., with the consent and authority of those who were the stockholders at the several times when such applications have been made. (Pierce on Railroads [Ed. of 1881], 123; *Mills* v. *N. R. of Buenos Ayres Co.*, L. R., 5 Ch. App. 621; *Scovill* v. *Thayer*, 105 U. S. 143.) The company could not, under the act of 1870, create additional stock

for the purpose of distributing it as a stock dividend. (*Scoville* v. *Thayer*, 105 U. S. 143 ; *N. Y.* v. *Schuyler*, 34 N. Y. 30, 49.) A stockholder has a right to obtain an adjudication condemning the illegal action of the directors or trustees of a company. *Clearwater* v. *Meredith*, 1 Wall. 25 ; *Gray* v. *N. Y.*, 5 T. & C. 228 ; *Simpson* v. *W. P. Co.*, 8 H. of L. Cases, 717 ; *Lanman* v. *L. R. R.*, 30 Penn. St. 46 ; *Dodge* v. *Woolsey*, 18 How. 331 ; *Hoole* v. *G. W. R. R.*, L. R., 3 Ch. App. 262 ; *Kent* v. *Quicksilver Mining Co.*, 78 N. Y. 159.) The appeal is not authorized by the Code and should be dismissed. (*Arapahoe Co.* v. *Railroad Co.*, 4 Dillon, 277 ; *Hughes* v. *Stickney*, 13 Wend. 280 ; *Steele* v. *White*, 2 Paige, 478 ; *Idley* v. *Bowen*, 11 Wend. 227 ; *Cuyler* v. *Moreland*, 6 Paige, 273 ; *Hone* v. *Van Schaick*, 7 id. 221 ; *Swarthout* v. *Curtis*, 4 N. Y. 415 ; Code, §§ 191-2-3-4 ; *People* v. *Thatcher*, 55 N. Y. 527 ; *Conger* v. *Conger*, 77 id. 433 ; *Godfreyer* v. *Moser*, 66 id. 250.) The action is within established precedent. (*Dodge* v. *Woolsey*, 18 How. [U. S.] 341 ; *Robinson* v. *Smith*, 3 Paige, 222 ; *Greaves* v. *Gouge*, 69 N. Y. 154 ; *Goodson* v. *Richardson*, L. R., 9 Ch. App. 225 ; *Highbee* v. *R. R. Co.*, 20 N. J. 435 ; *Atty.-Gen.* v. *Stewart*, 21 id. 340.) There is no authority in this State for a corporation to issue certificates of stock, to represent past accretions to the value of its property, or to redivide its shares. (Angell and Ames on Corporations, § 111 ; *Salem Mill-dam* v. *Roche*, 6 Pick. 23, 32 ; *Biddle's Appeal*, 14 Cent. L. J. 253-4 ; *Phelps* v. *Farmers' B'k*, 26 Conn. 269 ; *Pittsburg Co.* v. *Alleghany Co.*, 63 Penn. St. 126 ; *Minot* v. *Paine*, 99 Mass. 101 ; *Boston R. R.* v. *Commw.*, 100 id. 399 ; *Deland* v. *Williams*, 101 id. 571 ; *Leland* v. *Haydon*, 102 id. 542 ; *Rand* v. *Hubbell*, 115 id. 461 ; *Clarkson* v. *Clarkson*, 18 Barb. 646 ; *Simpson* v. *Moore*, 30 id. 637 ; *Ehle* v. *Chittenango B'k*, 24 N. Y. 548 ; *Hyatt* v. *Alley*, 56 id. 557 ; *Scott* v. *C. R. R. Co.*, 52 Barb. 45 ; *Kane* v. *Bloodgood*, 7 Johns. Ch. 90 ; *Jones* v. *R. R. Co.*, 57 N. Y. 196 ; *Howell* v. *R. R. Co.*, 51 Barb. 378 ; *Mechanics' B'k* v. *N. Y. & N. H. R. R. Co.*, 13 N. Y. 617 ; *Asbury R. R. Co.* v. *Rich*, L. R., 7 E. & I. 653 ; *Gt. Eastern*

*R'y Co.* v. *Turner*, 8 Ch. App. 148; *Barry* v. *Mer. Ex. Co.*, 1 Sandf. Ch. 280; *South Bay Co.* v. *Gray*, 30 Me. 547; *State* v. *Morristown Co.*, 23 N. J. Law, 195.) The issue of certificates of stock without present consideration is a violation of law. (9 Abb. N. C. 419, 430.) The transaction is *ultra vires.* (*Thomas* v. *R. R. Co.*, 101 U. S. 83; *Abbott* v. *J.*, etc., *Horse R. R. Co.*, 80 N. Y. 27; *T. & B. R. R. Co.* v. *B. H. T. & W. R'y Co.*, 86 id. 117; *Scoville* v. *Thayer*, 105 U. S. 143; *Davis* v. *Old Col. R. R. Co.*, 131 Mass. 258; *Gt. E. R'y Co.* v. *Turner*, 8 Ch. App. 149; *Mechanics' B'k* v. *N. Y. & N. H. R. R. Co.*, 13 N. Y. 617; *N. Y. & N. H. R. R. Co.* v. *Schuyler*, 34 id. 30; *Railway Co.* v. *Allerton*, 18 Wall. 233; *State and Worth's Case*, L. R., 4 Ch. 685, *n.; Whitney Arms Co.* v. *Barlow*, 63 N. Y. 62.) The transaction is prohibited by statute and without the pale of the rule sanctioned by this court in those cases where the act has been upheld though *ultra vires,* for the reason that they were "not improper in themselves." (2 R. S. [5th ed.] 599; 1 Edmonds' R. S. 557, 558, § 2; 3 R. S. [2d ed.] 530, title 3, chap. 18, § 3; Laws of 1869, p. 2404; *Bailey* v. *N. Y. C. R. R. Co.*, 22 Wall. 604; *Asbury R'y Co.* v. *Rich*, L. R., 7 E. & I. 653.) Part execution of a void contract furnishes no defense. (*N. Y. & N. H. R. R. Co.* v. *Schuyler*, 34 N. Y. 30, 45; *Thomas* v. *R. R. Co.*, 101 U. S. 71; *Livingston* v. *Van Ingen*, 9 Johns. 507, 586–9.) Division of certificates is a division of capital. (2 R. S. [Banks' 7th ed.] 1533; *Brundage* v. *Brundage*, 60 N. Y. 544; *Tifft* v. *Porter*, 8 id. 516; *Currie* v. *White*, 45 id. 822; *Bailey* v. *N. Y. C. R. R. Co.*, 22 Wend. 604; 2 Statutes of 1869, p. 2404; *Schuyler's Case*, 34 N. Y. 30.) The directors were guilty of a breach of trust. (*People* v. *Commrs. of Taxes*, 23 N. Y. 220; *Miller* v. *Ill. Cent. R. R. Co.*, 24 Barb. 330; *Upton* v. *Tribilcock*, 1 Otto, 45; *Barnes* v. *Brown*, 80 N. Y. 534; *Knowlton* v. *Congress Co.*, 57 id. 542; *Neuse River Co.* v. *Commrs. of Newberne*, 7 Jones' L. R. [N. C.] 275.) The acts complained of being wholly unauthorized and illegal are tortious and wrongful, the directors as trustees are individually, jointly and severally liable. (*Rob-*

*inson* v. *Smith*, 3 Paige, 231; *Cross-Town R. R. Co.* v. *Strong*, 1 Otto, 45; *Webster* v. *Upton*, id. 65; *Sawyer* v. *Hoag*, 17 Wall. 610.) The Telegraph Act of 1870 (Chap. 568) does not authorize the purchase of the telegraph lines of the American Union and Atlantic and Pacific Telegraph Companies, the principal portions of those lines being worked in competition with parallel lines of the Western Union. (4 Term R. 797; 6 Bac. Abr. 380, 381; *Jackson* v. *Gilchrist*, 15 Johns. 89, 116; *Constantine* v. *Winkle*, 6 Hill, 177; Sedgwick on Statutory and Constitutional Law, 43; Maxwell's Interpretation of Statutes, 39; 7 B. & C. 643; *Copeman* v. *Gallant*, 1 P. Wms. 320; *Royal* v. *Rowles*, 1 Atk. 174; 1 Ves. 365, 371; Dwarris on Statutes, by Potter, 145, 146; American Rules of Interpretation, Rules 18, 21.) The authority given to a telegraph company by the act of 1870 to sell out all its property, franchises, etc., cannot be performed by the board of directors. It is a power to be exercised according to the rules of the common law. (Angell & Ames on Corporations, § 327 [7th ed. by Lathrop]; *McMurdy* v. *Myers*, 44 Penn. St. 535.) The right of a stockholder to object to any act of the company which is *ultra vires* is absolute. (*Asbury R. R. Co.* v. *Rich*, L. R., 7 E. & I. 653; *Gt. E. Ry.* v. *Turner*, 8 Ch. App. 649; *Whitney Arms Co.* v. *Barlow*, 62 N. Y. 62, 68.) This appeal is not authorized by the Code and should be dismissed. (*Arapahoe Co.* v. *R. R. Co.*, 4 Dillon, 277; *Hughes* v. *Stickney*, 13 Wend. 280; *Steele* v. *White*, 2 Paige, 478; *Idley* v. *Bowen*, 11 Wend. 227; *Cuyler* v. *Moreland*, 6 Paige, 273; *Hone* v. *Van Schaick*, 7 id. 221; *Swarthout* v. *Curtis*, 4 N. Y. 415; Code, §§ 191-2-3-4; *People* v. *Thatcher*, 55 N. Y. 527; *Conger* v. *Conger*, 77 id. 433; *Godfrey* v. *Moser*, 66 id. 250.)

EARL, J. The appellant, the Western Union Telegraph Company, was, on and prior to the 19th day of January, 1881, a corporation organized under the laws of this State, and its capital stock was $41,073,410, divided into shares of $100 each; at the same date the Atlantic and Pacific Telegraph Company

was a corporation organized under the laws of this State, and its authorized capital consisted of one hundred and fifty thousand shares of $100 each, of which only one hundred and forty thousand shares had been issued and were outstanding ; and the American Union Telegraph Company was also a corporation organized under the laws of this State, and its capital was $10,000,000, and it owed a bonded debt of $5,000,000. The telegraph lines of these companies were, to a large extent, parallel and between the same places, but the lines of each company extended to some places which were not reached by the lines of either of the other companies.

On the 11th day of January, 1881, a conference between certain of the directors of these corporations was held for the purpose of agreeing upon a basis for the consolidation of the property, interests and business of the three corporations, which basis, reduced to writing in the form of an agreement, provided that the Western Union Telegraph Company should purchase from the other companies all their telegraph lines, property, rights, privileges and franchises of every nature whatsoever, excepting the franchise of each to be a corporation, and that they should severally sell and convey all such property, rights, privileges and franchises to the Western Union Telegraph Company. The consideration for the sale and conveyance of the American Union Telegraph Company was to be one hundred and fifty thousand shares of the capital stock of the Western Union Telegraph Company, of the par value of $100 each, to be thereafter issued and delivered to the Union Trust Company of the city of New York, which was to distribute the same in exchange for the shares of the American Union Telegraph Company, to the amount of one hundred thousand shares, and the bonds of that company, not exceeding in amount the full sum of $5,000,000, the holder of each share of American Union Telegraph Company's stock to be entitled to receive, upon surrender of the same, one share of Western Union Telegraph Company's stock, and the holder of every bond to be entitled, upon the surrender of the same, to shares of the Western Union

Telegraph Company equal at par to the amount of the principal of his bond.

The consideration for the sale of the Atlantic and Pacific Telegraph Company was to be eighty-four thousand shares of the capital stock of the Western Union Telegraph Company of the par value of $100 each, to be issued and delivered to holders of the Atlantic and Pacific stock at the rate of eighty-four thousand shares of Western Union stock for one hundred and forty thousand shares of Atlantic and Pacific stock, at the par value of $100 each. It was further provided, that all shares of the American Union and Atlantic and Pacific Telegraph Companies after exchange, should by the Union Trust Company be duly transferred and delivered to the Western Union Telegraph Company and belong to it; that that company should take such proceedings as it might be advised to cause its capital stock to be increased, by an addition to its then outstanding stock of $38,926,590, represented by shares of $100 each, and should issue the same to the Union Trust Company for distribution as follows: $15,526,590 to those then holding its shares, the same being intended to represent its investment of earnings in the purchase, construction and equipment of additional lines, wires and general plant since the 1st day of July, 1866, and the remaining sum, $23,400,000, for the acquisition of the property, privilege and franchises of the other companies; that the possession of the property purchased should be delivered to the Western Union Telegraph Company by the other companies on the 24th day of February, 1881, and the shares of its capital stock should be by it delivered to the Union Trust Company of New York for the purpose mentioned, on or before the same date.

The president of the Western Union Telegraph Company, for the purpose of completing that agreement, thereupon called and procured a meeting of the directors of that company to be held on the 12th day of January, 1881, and he laid the agreement before them, and the same was thereupon approved and adopted by them, and the president was formally instructed to call a special meeting of the stock-

holders of that company for the purpose of carrying out and effectuating the agreement. He thereupon fixed February the 5th, 1881, as the day on which the special meeting of the stockholders should be held, and mailed notices to all the stockholders, and caused notices to be published in three newspapers printed in the city of New York and in the State paper printed at Albany, to the effect and in substance, that in accordance with the by-laws and the request of a majority of the directors a special meeting of the stockholders of the corporation would be held on the 5th day of February, 1881, for the purpose of acting upon the terms of consolidation, purchase and agreement between that company and the American Union Telegraph Company and the Atlantic and Pacific Telegraph Company for the purchase of the property, rights, privileges and franchises of the last-named companies, and the increase of the capital stock of the Western Union Telegraph Company to the full amount of $80,000,000. Immediately after these notices were issued, the directors of the appellant caused the agreement to be reduced to writing and to be executed under seal by the officers of the corporations on the 19th day of January, 1881. On the 3d day of February, 1881, an agreement supplementary to the last-named agreement was made, executed and delivered by the persons in authority in the three companies, which provided, among other things, that all the properties, rights and privileges specified and described in the prior agreement of the companies should be and were transferred to the Western Union Telegraph Company; that until that company could prepare and issue the shares of capital stock agreed to be paid for such properties and rights in exchange for the stock and bonds of the American Union Telegraph Company, and for the stock of the Atlantic and Pacific Telegraph Company, and the stock agreed to be distributed to the stockholders of the Western Union Telegraph Company, it should issue certain certificates of indebtedness which need not be more particularly mentioned.

The meeting of the stockholders pursuant to the call was held on the 5th of February, 1881, three hundred and eight

thousand seven hundred and eighty-nine shares being represented in person or by proxy ; and three hundred and eight thousand one hundred and eighty-nine of such shares, representing more than three-fourths in amount of the whole capital stock of the Western Union Telegraph Company, then voted for the ratification of and consented to the contracts of January 19 and February 3, which were submitted to them, six hundred shares only voting against such ratification. At the same meeting three hundred and eight thousand one hundred and eighty-nine shares voted in favor of an increase of the capital stock of the Western Union Telegraph Company to $80,000,000 and one hundred shares voted against it. The consent and ratification by the stockholders were reduced to writing and entered upon the minutes of the meeting. On the same day more than two-thirds of the directors, by a writing to that effect signed by them, consented to and ratified and approved the increase of the capital stock of the Western Union Telegraph Company to $80,000,000. The plaintiff in this action attended the stockholders' meeting in person or by proxy, and voted upon his one hundred shares both against ratifying and approving of the agreements of January 19 and February 3, and against increasing the capital stock to $80,000,000.

On the 19th day of January, 1881, the property, franchises and privileges belonging to the Western Union Telegraph Company were worth more than the amount of its capital over and above its indebtedness, and the property, rights and franchises of the Atlantic and Pacific Telegraph Company were fully and fairly worth the sum of $8,400,000, and the property, rights and franchises of the American Union Telegraph Company were, worth $15,000,000 ; and such, on that day, were the estimates of the values made by the directors of the respective companies. The actual value of the investments of the surplus earnings of the defendant, the Western Union Telegraph Company, as they existed January 19, 1881, was estimated by the directors of the company ; and it was their judgment that the amount of the stock to be distributed among the stockholders of the Western Union Telegraph Company represented no more than

the investments of the surplus earnings of the company since July 1, 1866; and such surplus earnings were worth the sum of over $15,526,590.

All the telegraph lines and appurtenances thereto, mentioned in the agreement of January 19, 1881, belonging to the American Union Telegraph Company and to the Atlantic and Pacific Telegraph Company, were, on the 3d day of February, 1881, pursuant to the agreement, delivered to and received by the Western Union Telegraph Company. The plaintiff became the owner in his own right of one hundred shares of the capital stock of the Western Union Telegraph Company on the 22d day of January, 1881. This suit was commenced about the 14th of February, 1881, against the Western Union Telegraph Company and all the directors of that company, and the Union Trust Company; but before its commencement the contracts of January 19 and February 3 had, to a large extent, been carried into effect by a delivery and distribution of the stock as therein provided for.

The plaintiff alleged in his complaint the ownership by him of one hundred shares of the capital stock of the Western Union Telegraph Company, the organization of that company, and of the other two telegraph companies; that there was a fraudulent combination and conspiracy among the directors of all these telegraph companies, for various purposes stated in the complaint, and that the agreement of January 19, 1881, was entered into in pursuance of such unlawful combination and conspiracy; that the meeting of stockholders to ratify the agreement was called in furtherance of the unlawful conspiracy, and that at such meeting the defendants who are directors in the Western Union Telegraph Company, controlling a majority of its stock, voted in favor of ratifying the contract and increasing the capital stock to $80,000,000; that the property, rights and franchises of the Atlantic and Pacific Telegraph Company and the American Union Telegraph Company did not exceed in value about the sum of $8,000,000, which was well known to the directors of the Western Union Telegraph Company; that the prices named in the agreement for the purchase

of those two companies were a fraud upon the rights of the plaintiff and other stockholders similarly situated; that the Western Union Telegraph Company did not have surplus property over and above its capital stock sufficient to represent the stock dividend of upward of $15,000,000; that the dividend was a violation of law and a breach of trust on the part of the directors, which rendered them personally liable for the payment into the treasury of the company of the full face value of all such capital stock so divided and distributed; and the plaintiff prayed for judgment that the defendants, and each of them, be enjoined and restrained from issuing and delivering to any stockholder of the Western Union Telegraph Company, of the Atlantic and Pacific Telegraph Company, or of the American Union Telegraph Company, or to any person on their behalf, any certificate of capital stock of the Western Union Telegraph Company until the full face value of such capital stock should be paid into its treasury, and that the directors be enjoined and restrained from voting upon any stock of the Western Union Telegraph Company, held or owned by them, or either of them, in favor of the increase of such capital stock or the ratification of the contract of January 19; that should the increased capital stock be issued, then that an account be taken and stated of all and singular the property and assets received by the defendant, the Western Union Telegraph Company, therefor; that the defendants, other than said company and other than the said trust company, be adjudged and decreed to pay to the defendant, the Western Union Telegraph Company, the amount which the stock thus issued should exceed the value of the property received therefor; that, if the amount of $15,526,590 of the capital stock of the Western Union Telegraph Company, or any part thereof, should be issued and distributed among the stockholders, without payment in cash therefor, then that the directors of that company should be adjudged and decreed to pay the full amount thereof, with interest, to that company, and that said company be restrained from permitting the transfer on its books of any of such increased capital stock beyond the author-

ized capital of $41,073,410, and that the plaintiff should have such other and further relief as he might be entitled to in the premises.

The cause was put at issue by answer, and came on for trial at a Special Term of the court, where the trial judge found, among other facts, all the facts hereinbefore stated, and also found that the object of the purchase by the Western Union Telegraph Company of the property, privileges and franchises of the other companies was to perfect and extend the connections between that company and the other two companies in this State, and to permit their union with the telegraph systems which those companies had established in other States; and he refused to find the fraud and conspiracy alleged in the complaint; and he found as matters of law that the purchase by the Western Union Telegraph Company of the property, privileges and franchises of the other companies was valid and lawful according to the laws of this State; that the stock dividend of the Western Union Telegraph Company was not a division, withdrawal or payment to its stockholders, or any of them, of any part of the capital stock of the company, and that it was a proper and lawful exercise of the power of the corporation to issue to its stockholders certificates which afford evidence of the investment, with the consent of its stockholders, of its surplus earnings in property necessary and useful in and about the transaction of its business; that the agreements had been so far executed that no stockholder of the Western Union Telegraph Company had any right to bring an action to restrain their complete execution; that the plaintiff had not sustained and was not likely to sustain any injury from the execution of the agreements, and had no right to restrain their execution, and that the defendants were entitled to judgment, dismissing the complaint on the merits. The judgment entered at Special Term was, upon appeal, reversed at the General Term upon questions of law only, and then the Western Union Telegraph Company, giving the stipulation required in such cases, alone appealed from the order granting the new trial to this court.

Having thus brought to view the material facts of this case and the substance of the complaint and of the findings of the Special Term, we will now call attention to the statutes under which the telegraph companies were organized and by the authority of which it is claimed the action was taken which is now complained of. The first act is chapter 265 of the Laws of 1848, which provided that any number of persons might associate for the purpose of constructing a line of wires of telegraph through this State, or from or to any point within this State, upon complying with certain requirements of the act, one of which is that the persons shall make and file a certificate which shall specify, among other things, the capital stock of such association and the number of shares into which the stock shall be divided; and section 8 further provided that it should be lawful for any association of persons organized under the act to provide, by their articles of association, for an increase of their capital and the number of shares into which it shall be divided.

Chapter 98 of the Laws of 1851 authorized the directors of any company organized under the act of 1848 at any time, with the written consent of the persons owning two-thirds of the capital stock of such company, to extend its line of telegraph, or to construct branch lines to connect with its main line, or to unite with any other incorporated telegraph company. Chapter 471 of the Laws of 1853 further amended the act of 1848 by authorizing any number of persons, upon complying with the requirements of the act of 1848, to associate for the purpose of owning, constructing, using and maintaining a line or lines of electric telegraph, whether wholly within or partly within the limits of this State, or for the purpose of owning any interest in any such line or lines of electric telegraph or any grants therefor. It also enabled every telegraph company existing in the State at the time of its passage, to obtain the benefit of the statute, on filing a certificate of a resolution adopted by a majority of its board of directors to organize under the amendatory act, and authorized every association entitled to the benefit of the statute, to erect and construct

from time to time the necessary fixtures upon, over or under any of the public roads, streets and highways and through, across or under any of the waters within the limits of this State, subject to the restrictions of the act of 1848, and also to erect and construct such fixtures upon, through or over any other land subject to the right of the owner or owners thereof, to full compensation for the same.  Chapter 425 of the Laws of 1862, further amending the act of 1848, provided that any company duly incorporated under the last-named act might construct, own, use and maintain any line or lines of electric telegraph not described in their original certificate of organization, whether wholly within or wholly or partly beyond the limits of this State, and might join with any other corporation or association in constructing, leasing, owning, using or maintaining such line or lines, and might own and hold any interest in any such line or lines, and might become lessees of any such line or lines.  Chapter 568 of the Laws of 1870, containing but one section, provides as follows :  " In order to perfect and extend the connections of telegraph companies in this State, and promote their union with the telegraph systems of other States, any telegraph company, organized under the laws of this State, may lease, sell or convey its property, rights, privileges and franchises, or any interest therein or any part thereof, to any telegraph company organized under or created by the laws of this or any other State, and may acquire by lease, purchase or conveyance the property, rights, privileges and franchises, or any interest therein or any part thereof, of any telegraph company organized under or created by the laws of this or any other State, and may make payments therefor in its own stock, money or property, or receive payment therefor in the stock, money or property of the corporation to which the same may be sold, leased or conveyed; provided, however, that no such purchase, sale, lease or conveyance by any corporation of the State shall be valid until it shall have been ratified and approved by a three-fifths vote of its board of directors or trustees, and also by the consent thereto in writing or by vote at a general meeting, duly called for the

purpose, of three-fifths in interest of the stockholders in such company present or represented by proxy at such meeting." By chapter 319 of the Laws of 1875, section 8 of the act of 1848 was amended so as to read as follows: "It shall be lawful for any association of persons organized under this act, by their articles of association, to provide for an increase of their capital and the number of shares of the capital stock of the association. But if any such association shall have omitted so to provide for an increase of their capital, it shall be lawful after notice of an intention so to do, published once a week for six weeks successively in the State paper, and in any newspaper of general circulation published in the county where the principal office of such company is located, and with the written consent of shareholders holding and owning three-fourths in amount of the then capital stock, to provide for an increase thereof, and the number of shares into which the same shall be divided by an additional certificate specifying such increase and such number, which certificate shall be executed, proved or acknowledged by the board of directors of such association, or a majority of them, and filed as provided in section two of this act; and such certificate may, upon a like notice and consent, also contain a statement of and provision for any desired change in the general route of the lines of the association, designating the route or routes and the points to be connected, and such certificate shall be deemed and taken as a part of the articles of association already filed."

The act last named furnishes ample authority for the increase of the capital stock of the Western Union Telegraph Company. The articles of association of that company were not put in evidence, and hence it does not appear whether they provided for an increase of its capital stock or not. If they did, in the absence of any proof to the contrary, it would be assumed that the increase was justified by the articles. A stockholder coming into court and alleging that the increase of stock was unauthorized by the articles of association, in order to maintain his allegations, would have the burden to prove and establish that fact. He could not rest upon presumption, and could not ask

the court to infer that a power conferred by the articles of association had been improperly or illegally exercised. If the articles of association, however, did not provide for an increase of its capital stock then the directors of the company, for the purpose of accomplishing such increase, could proceed under the act of 1875. It is not disputed that the steps which are required by that act to accomplish an increase of stock were taken by the directors. The requisite notices were published. There was the requisite consent of the shareholders holding and owning three-fourths in amount of the capital stock and the requisite action of the board of directors. So that upon the argument before us it was not disputed by the learned counsel for the respondent that the necessary action had been taken to make a legal and lawful increase of the capital stock of the Western Union Telegraph Company to the sum of $80,000,000.

The shares of stock having thus been legally brought into existence, the act of 1870 furnished ample authority for the purchase by the Western Union Telegraph Company of the property, franchises and privileges of the other two companies, and paying therefor by its stock. It was found by the trial judge that the objects and purposes of the purchase were such as are sanctioned by that act. These three telegraph companies were not companies owning precisely parallel lines, or lines running exactly between the same places; but each company reached some points which were not reached by either of the others; and it is difficult to perceive how the broad and explicit language used can be so tortured as to forbid the combination of these three companies in the manner in which it was accomplished. Upon this point the opinion of BARRETT, J., in *Hatch* v. *American Union Telegraph Company* (9 Abb. N. C. 228), leaves nothing to be said. Indeed, upon the argument before us, the right to purchase the property, privileges and franchises of the two other companies by the Western Union Telegraph Company, under the act of 1870, was not much challenged. The main contention was, that the stock dividend distributing upwards of $15,000,000 of stock among

the stockholders of the Western Union Telegraph Company, was unauthorized and in violation of law, and whether it was or not is the principal matter for our determination upon this appeal.

The stock dividend was claimed to be in violation of chapter 18, part 1, title 4, section 2 of the Revised Satutes, which provides as follows : " It shall not be lawful for the directors or managers of any incorporated company in this State to make dividends excepting from the surplus profits arising from the business of such corporation ; and it shall not be lawful for the directors of any such company to divide, withdraw, or in any way pay to the stockholders, or any of them, any part of the capital stock of such company, or to reduce the said capital stock without the consent of the legislature; and it shall not be lawful for the directors of such company to discount or receive any note or other evidence of debt in payment of any installment actually called in and required to be paid, or any part thereof due or to become due on any stock in the said company; nor shall it be lawful for such directors to receive or discount any note or other evidence of debt with the intent of enabling any stockholder in such company to withdraw any part of the money paid in by him on his stock; and in case of any violation of the provisions of this section the directors, under whose administration the same may happen, except those who may have caused their dissent therefrom to be entered at large on the minutes of the said directors at the time, or were not present when the same did happen, shall, in their individual and private capacities, jointly and severally, be liable to the said corporation and to the creditors thereof, in the event of its dissolution, to the full amount of the capital stock of the said company, so divided, withdrawn, paid out, or reduced, and to the full amount of the notes or other evidences of debt so taken or discounted in payment of any stock, and to the full amount of any notes or evidences of debts so discounted with the intent aforesaid, with legal interest on the said respective sums from the time such liability accrued ; and no statute of limitation shall be a bar to any suit at law or in equity against such directors for any sums

for which they are made liable by this section; provided this section shall not be construed to prevent a division and distribution of the capital stock of such company which shall remain after the payment of all its debts upon the dissolution of such company, or the expiration of its charter."

This dividend was condemned by the General Term of the Superior Court as a violation of that section. Our attention has been called to no other law forbidding or condemning a stock dividend, and in their allegations against it the counsel for the plaintiff rely mainly upon that section. After reading the numerous opinions that have been submitted to us and giving careful attention to all that has been said upon the subject, we are unable to perceive that that section has any bearing whatever upon the question we are to determine. The section was taken from the act chapter 325 of the Laws of 1825, which was entitled, "An act to prevent fraudulent bankruptcies of incorporated companies, to facilitate proceedings against them, and for other purposes." It was not part of the original revision, but was incorporated into the Revised Statutes by chapter 20 of the Laws of 1828. A careful reading of the section shows that it has reference only to the property capital of a corporation, and not to its share capital. The first clause prohibits dividends of property except from surplus profits. It is further provided that the directors of any corporation shall not divide, withdraw or in any way pay to the stockholders, or any of them, any part of the capital stock of such company, or to reduce the capital stock without the consent of the legislature. These provisions were intended to prevent the division, distribution, withdrawal and reduction of the property of a corporation below the sum limited in its charter or articles of association for its capital, but not to prevent its increase above that sum. The purpose was to prevent the depletion of the property of the corporation thereby endangering its solvency. All the other provisions of the section show very clearly that such was the intention. Careful provision was made that the whole amount of capital stock should be paid in, and hence there was a prohibition against

receiving a note or other evidence of debt in payment of any installment actually called in and required to be paid; and in case the directors violated any of the provisions of the section they were made individually liable to the corporation and to its creditors, in the event of its dissolution, to the full amount of the capital stock of the company so divided, withdrawn or reduced. All these provisions show that it was the purpose of the legislature, by means of them, to create a property capital for the corporation, and then to keep that intact so as to secure the solvency of the corporation and its responsibility to its creditors. The " capital stock " in this section does not mean share stock, but it means the property of the corporation contributed by its stockholders or otherwise obtained by it, to the extent required by its charter. While the term "capital stock" is frequently used in a loose and indefinite sense, in this section and in legal phrase generally it means that and no more. In *State* v. *Morristown Fire Association* (3 Zabr. 195), GREEN, Ch. J., said : " The phrase ' capital stock ' is very generally, if not universally, used to designate the amount of capital to be contributed for the purposes of the corporation. The amount thus contributed constitutes the ' capital stock ' of the company." In *Burrall* v. *Bushwick R. R. Co.* (75 N. Y. 211), FOLGER, J., defined "capital stock " as " that money or property which is put in a single corporate fund by those who by subscription therefor become members of a corporate body." In *Barry* v. *Merchants' Exchange Co.* (1 Sandf. Ch. 280), Vice-Chancellor SANDFORD said : " The capital stock of a corporation is like that of a copartnership or joint-stock company, the amount which the partners or associates put in as their stake in the concern." By loss or misfortune, or misconduct of the managing officers of a corporation, its capital stock may be reduced below the amount limited by its charter; but whatever property it has up to that limit must be regarded as its capital stock. When its property exceeds that limit, then the excess is surplus. Such surplus belongs to the corporation and is a portion of its property, and, in a general sense, may be regarded as a portion of its capital, but in a strictly legal sense it is not

a portion of its capital, and is always regarded as surplus profits. The very section we are considering contemplates that there may be a surplus, and that such surplus may be divided. The surplus may be in cash, and then it may be divided in cash; it may be in property, and if the property is so situated that a division thereof among the stockholders is practicable, a dividend in property may be declared, and that may be distributed among stockholders. All such dividends diminish and deplete the property of the corporation, and that section was designed to prevent dividends of property which tended to deplete the assets of the company below the sum limited in its charter as the amount of its capital stock. But stock dividends never diminish or interfere with the property of a corporation, and hence are not within the purview of that section. After a stock dividend a corporation has just as much property as it had before. It is just as solvent and just as capable of meeting all demands upon it. After such a dividend the aggregate of the stockholders own no more interest in the corporation than before. The whole number of shares before the stock dividend represented the whole property of the corporation, and after the dividend they represent that and no more. A stock dividend does not distribute property, but simply dilutes the shares as they existed before; and hence that section in no way prevented or related to a stock dividend. Such a dividend could be declared by a corporation without violating its letter, its spirit or its purpose. It is, therefore, clear that the directors of the Western Union Telegraph Company did not violate that section by the stock dividend which they declared; and if that dividend was illegal it must be because it was condemned by some other statute, or by some general principle of law or by public policy.

Our attention has been called to no statute, and we know of none in this State which prohibits a corporation from making a stock dividend. The legislatures in some of the States have, we believe, passed laws prohibiting such dividends; but in this State no such law has been enacted.

There is no public policy which, in all cases, condemns such

dividends. Shares having been legally brought into existence may be distributed among the stockholders of a company. By such distribution no harm is done to any person, provided the dividend is not a mere inflation of the stock of the company, with no corresponding values to answer to the stock distributed. It may be that a distribution of stock gratuitously to the stockholders of a company based upon no values, a mere inflation, or, to use a phrase much in vogue, a watering of stock, would be condemned by the law. But when stock has been lawfully created and is held by a corporation, which it has a right to issue for value, then a stock dividend may be made, provided that the stock always represents property. It is conceded that the directors of the Western Union Telegraph Company could have issued this stock for money to be paid into its treasury. It could have issued it for property to be received by it for the purposes of its legitimate business. But here it is found that over and above its capital it possessed property actually worth upwards of $15,000,000, and we know of no law that is violated, and no public policy that is invaded by issuing to the stockholders stock to represent that amount of property rather than in any mode to divide it up and distribute it among them. If it can issue stock in payment of property to be obtained by it as part of its capital for its legitimate uses, why may it not issue stock to its stockholders in payment for property in effect purchased of them and added to its permanent capital, and which they relinquish the right to have divided? So long as every dollar of stock issued by a corporation is represented by a dollar of property, no harm can result to individuals or the public from distributing the stock to the stockholders. Here there was no fraud, no conspiracy, no unlawful combination, and we are bound, under the findings of the court at Special Term, to assume that all this was done in good faith; and we know of no principle of law, no public policy, and no statute that condemns a stock dividend under such circumstances. (*Howell* v. *The Chicago & Northwestern R. Co.*, 51 Barb. 378; *Jones* v. *Terre Haute & Richmond R. R. Co.*, 57 N. Y. 196; *Kenton Furnace, etc., Co.* v. *Mc-*

*Alpin*, 5 Fed. Rep. 743 ; *Attorney-General* v. *State Bank*, 1 D. & B. Eq. Cas. 545; *Minot* v. *Paine*, 99 Mass. 101 ; *Rand* v. *Hubbell*, 115 id. 471; *Brown* v. *Lehigh Coal & Nav. Co.*, 49 Penn. St. 270 ; *Commonwealth* v. *Pittsburgh, Fort Wayne & Chicago R. Co.*, 74 id. 83 ; *Terry* v. *Eagle Lock Co.*, 47 Conn. 141 ; *Barton's Trust*, L. R., 5 Eq. Cas. 239; *Mills* v. *Northern R. of B. A. Co.*, L. R., 5 Ch. App. 621; Pierce on the Law of Railroads [2d ed.], 123.)

It is true that this dividend largely increases the capital stock of the company, but that is not against the policy of our laws. That cannot be against the policy of the law which the law expressly permits. There is no limit to the capital which business corporations in this State may have, and there is no limit in the law beyond which they may not increase their capital. All that can be required in any case is that there shall be an actual capital in property representing the amount of share capital issued. Indeed, so far as the solvency and responsibility of a corporation is concerned, they are increased by a stock dividend where it has a surplus of property to correspond to the amount of shares issued. In such case the surplus property is secured and impounded for the benefit of the creditors of the corporation and for the public, so that thereafter it can never be legally divided, withdrawn or dissipated in any way.

But if it can be conceived that this was a dividend of property within the meaning of the section of the Revised Statutes above set out, then what property did it divide? Not any portion of the capital of the company; that remained intact. After subtracting the dividend there remained to the company the full amount of its prior capital stock, to-wit: Property to the value of $41,073,410. Such is the finding of the trial court, and that cannot here be disputed. The company had made surplus earnings which it could have divided, but instead of dividing them it had invested them in property to facilitate and enlarge its business ; and such property was found to be worth $15,526,590. That sum constituted its surplus. It was commingled with the other property of the company and used for

corporate purposes. But it was not beyond the reach of the dividend-making power of the directors. They could reclaim it for division among the stockholders, and, if practicable, convert it into cash for that purpose. They could borrow money on the faith of it and divide that. They could issue to the stockholders certificates of indebtedness, redeemable in the future, representing their respective interests in such surplus, thus, in effect, borrowing the same of the stockholders. Desiring to use the surplus and add it to the permanent capital of the company, and having lawfully created shares of stock, they could issue to the stockholders such shares to represent their respective interests in such surplus. In doing these things no law would be violated, the capital would be kept intact, and no stockholders or creditors would have any legal right to complain. All this, however, depends upon the finding of the trial court that the surplus is equal to the dividend. That finding is not open to criticism here. It was not disturbed at the General Term and therefore concludes us.

When a corporation has a surplus, whether a dividend shall be made, and if made, how much it shall be, and when and where it shall be payable, rest in the fair and honest discretion of the directors uncontrollable by the courts. (*Brown* v. *Monmouthshire R'y & C. Co.*, 4 Eng. L. & Eq. 118 ; *Rex* v. *Bank of England*, 2 Barn. & Ald. 620 ; *Jackson's Admr's* v. *Newark Plankroad Co.*, 31 N. J. Law, 277 ; *Ely* v. *Sprague*, Clark's Ch. 351.) There is no statute which requires dividends in telegraph companies or in companies generally to be made in cash. Whether they shall be made in cash or property must also rest in the discretion of the directors. There is no rule of law or reason founded upon public policy which condemns a property dividend. The directors could convert the property into cash before a dividend and divide that. So the stockholders can take the property divided to them and sell it and thus realize the cash. Within the domain of law, it can make no material difference which course is pursued. If, however, a dividend be made payable in cash or payable generally, the corporation becomes a debtor, and must discharge such debt, as it is bound to discharge all its

other debts, in lawful currency. It is true that a stockholder cannot be compelled to receive property divided to him. So he cannot be compelled to take a cash dividend. In case of his refusal to take a cash dividend, the corporation may retain it for him until he shall demand it. In case he shall refuse to take a property dividend, the corporation may retain it and hold it in trust for him, or possibly sell it for his benefit. If such a case shall ever arise, the courts will find some way to dispose of it. So this plaintiff cannot be compelled to accept the stock divided to him, and thus incur the possible liability which it may impose upon him as a stockholder. In case of his refusal, the corporation will find some way to deal with the stock which the law will sanction, but which need not now be pointed out.

We have no occasion to scrutinize the motives of the defendants. The trial judge refused to find the alleged fraud and conspiracy, and his finding concludes us. In his opinion he said : " I have also found that the other allegations of fraud and conspiracy made in the complaint against the defendants and others were not proved on the trial. One of the very able counsel for the plaintiff, in his argument at the close of the trial in this case, said that he was not going to lament the fact that he had failed to show such combination, that he had not been able to prove certain things by the defendants ; " and the opinion of the court at the General Term is to the same effect : " The complaint, among other things, charges that the corporate action complained of was the result of a fraudulent conspiracy on the part of the individual defendants, but the allegations in that respect were not sustained by the proof at the trial, nor has there been an argument made in their support upon the present appeal."

We are, therefore, of opinion upon the facts, found at Special Term, that the stock dividend was authorized by law and, therefore, valid.

The only other question which we deem it important to consider is, whether the Western Union Telegraph Company alone had the right to appeal to this court, giving the stipulation for judgment absolute against it in case the order should

be affirmed. By section 190 of the Code, every party has a right to appeal from an order granting a new trial, and the only requirement is by section 191, that the notice of appeal shall contain an assent on the part of the appellant that, if the order be affirmed, judgment absolute shall be rendered against him. A party cannot be deprived of that right, because he happens to be joined with others as a defendant in a suit. It might be otherwise if the defendants were jointly interested in the defense, as if they were sued as partners. But here the liability of the defendants is a several liability. Substantial relief is claimed against the Western Union Telegraph Company, which is not claimed and could not be claimed against the other defendants. The purpose of the action, among other things, was to annul its corporate proceedings and to restrain and impair corporate action. It is in effect the principal defendant, because, if its corporate action was authorized and legal, then no liability attaches to any one. If its corporate action was illegal and should be held to be null and void, or be set aside, then responsibility might attach to the other defendants.

In such a case, a defendant situated like the Western Union Telegraph Company has the absolute right without joining with the other defendants to appeal from an order granting a new trial and stipulate for judgment against it in case of affirmance. If the other defendants do not desire to appeal or give a stipulation, they can go back to a new trial. In such a case the whole matter is within the control of the courts. If deemed wise, this court could postpone the argument of the appeal until the new trial as to the other defendants should be had; or the trial as to the other defendants might be suspended by the court below until the appeal should be heard. The course to be pursued is always in the discretion of the courts, which is to be exercised in view of the circumstances of the particular case. The case of *People, ex rel. Judson,* v. *Thacher* (55 N. Y. 525 ; 14 Am. Rep. 312) is not in conflict with these views. That was an action in the nature of a *quo warranto* by the people on the relation of Judson against Thacher, to determine the title to the office of mayor; and Thacher, the incum-

bent of the office, succeeded at the trial term, and the judgment in his favor was reversed at the General Term, and a new trial granted. He then appealed to this court, giving the stipulation for judgment absolute in case the order should be affirmed, and it was held that that was not a case in which the stipulation could be given and the appeal taken, for the reason that there were two questions involved in the action; first, whether the defendant was entitled to the office; and if he was not, second, whether the relator was; and if the defendant could give the stipulation and judgment should go against him, it was held that that would not determine the right of the relator to the office; and hence that was a case in which the stipulation could not be given, as it might result in turning the relator out of court without having his right to the office determined in that action. But here there is no such difficulty, and judgment in favor of the appellant will determine the whole controversy as to all the parties. A decision against the appellant in this court would leave the other defendants still with the right to defend the action as best they could.

Our attention upon the argument was called to certain exceptions taken during the trial, of minor importance, to which we have given careful attention, and we do not think that any of them point out any error prejudicial to the plaintiff.

We have not considered and do not determine the point made by the defendants, that the plaintiff, as an individual stockholder, who purchased his stock while the transactions of which he complains were *in fieri*, and after he had some notice of them, cannot, in any aspect of the case, maintain this action, upon the facts existing, for the relief which he seeks. We prefer to rest our decision upon the broader ground upon which we have placed it. We are, therefore, of opinion that the order of the General Term should be reversed, and the judgment of the Special Term affirmed, with costs.

A similar order should be entered in *Hatch* v. *The Western Union Telegraph Company and others*, and as these decisions vacate the injunction orders, the appeals from those orders should be dismissed, without costs.

All concur, except RUGER, Ch. J., and DANFORTH, J., taking no part.

Order reversed and judgment accordingly.