### TOWNE v. EISNER, Internal Revenue Collector.

(District Court, S. D. New York. June 15, 1917.)

1. INTERNAL REVENUE ⬅➡7—INCOME TAX—GAINS AND PROFITS OF BUSINESS.
   Gains and profits from business can only be taxed under Income Tax Act Oct. 3, 1913, c. 16, 38 Stat. 114, by virtue of ownership of the property from which they are derived.

   [Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. §§ 8–10.]

2. INTERNAL REVENUE ⬅➡2—CONSTITUTIONALITY OF REVENUE LAWS.
   Under Const. Amend. 16, providing that Congress shall have power to lay and collect taxes on income from whatever source derived, without apportionment among the several states, and without regard to any census or enumeration, stock dividends cannot be reached by Income Tax Act Oct. 3, 1913, even though expressly declared taxable thereby, unless they are in fact income.

   [Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. § 2.]

3. CONSTITUTIONAL LAW ⬅➡14—STATUTES ⬅➡188—MEANING OF LANGUAGE—PRIOR CONSTRUCTION BY CONGRESS.
   The word "income," as used in Const. Amend. 16, and in Income Tax Act Oct. 3, 1913, must be presumed to have been used in the sense in

---

⬅➡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

which the Supreme Court had theretofore defined it, if judicial definition had been clearly given.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 11; Statutes, Cent. Dig. §§ 266, 267, 276.]

4. INTERNAL REVENUE ☞7—INCOME TAXES—STOCK DIVIDENDS.

That a stock dividend so lessened the market price of a stockholder's original stock as not to affect the market value of his aggregate holdings is not conclusive that it was not income taxable under Income Tax Act Oct. 3, 1913, § 2, par. B, providing that the net income of a taxable person shall include gains, profits, and income derived from interest, rent, dividends, securities, or the transaction of any lawful business carried on for gain or profit, or gains or profits and income derived from any source whatever, as this would be true in case of any cash dividend, extraordinary, or even ordinary.

[Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. §§ 8–10.]

5. INTERNAL REVENUE ☞7—INCOME TAX—STOCK DIVIDEND—"GAINS, PROFITS, AND INCOME."

Stock dividends are taxable income, under Income Tax Act Oct. 3, 1913, § 2, par. B, since, even though not technically dividends, they represent "gains, profits, and income," within the meaning of the statute, and they are subject to the supertax under paragraph A, subd. 2, providing that for the supertax there shall be a return of total net income from all sources, corporate or otherwise.

[Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. §§ 8–10.]

6. INTERNAL REVENUE ☞7—INCOME TAXES—STOCK DIVIDENDS.

Stock dividends are taxable as income, under Income Tax Act Oct. 3, 1913, though paid out of a surplus accumulated and in the treasury of the corporation when the act went into effect.

[Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. §§ 8–10.]

7. STATUTES ☞225—CONSTRUCTION—SUBSEQUENT LEGISLATIVE CONSTRUCTION.

Income Tax Act Sept. 8, 1916, c. 463, § 2, 39 Stat. 757 (Comp. St. 1916, § 6336b), providing that a cash or stock dividend payable out of earnings since March 1, 1913, shall be considered income, cannot be held to define the income taxable under Income Tax Act Oct. 3, 1913.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 298.]

8. INTERNAL REVENUE ☞2—CONSTITUTIONALITY OF REVENUE LAWS.

Income Tax Act Oct. 3, 1913, construed as taxing stock dividends, is constitutional, for they possess the real essentials of income.

[Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. § 2.]

At Law. Action by Henry R. Towne against Max Eisner, Collector of United States Internal Revenue for the Third District of the State of New York. On demurrer to the complaint. Demurrer sustained.

Louis H. Porter, of New York City, for plaintiff.

H. Snowden Marshall, U. S. Atty., of New York City (Ben A. Matthews, Asst. U. S. Atty., of New York City, of counsel), for defendant.

Archibald R. Watson, Paul D. Cravath, George Welwood Murray, and Charles E. Hughes, all of New York City, amici curiæ.

AUGUSTUS N. HAND, District Judge. This is an action to recover income taxes paid upon stock dividends under protest. The directors and stockholders of the Yale & Towne Manufacturing Company, having a surplus, all of which was earned prior to January 1,

1913, voted on December 17, 1913, to transfer $1,500,000 thereof to its capital account and to apply the same to the payment of an issue of 15,000 shares of new stock, of the par value of $100 a share, and to distribute this stock pro rata among stockholders of record on December 26, 1913. The actual distribution was made January 2, 1914. The effect of this resolution was to increase the capital stock from $3,000,000 to $4,500,000, par. The resolution under which the stock dividend was declared also provided for scrip redeemable at par for fractional shares. The plaintiff was a holder of 8,349 shares of stock of the company, and upon distribution of the stock dividend received 4174½ more. A tax of $20,208.94 was assessed upon his stock dividend, which he paid under protest, and now sues to recover.

The act of October 3, 1913, provides (section B):

"* * * The net income of a taxable person shall include gains, profits, and income derived from * * * interest, rent, dividends, securities, or the transaction of any lawful business carried on for gain or profit, or gains or profits and income derived from any source whatever."

The ruling of the Treasury Department (Decision 2274, issued December 22, 1915) provides:

"Stock dividends paid from the net earnings or the established surplus or undivided profits of corporations * * * are held to be the equivalent of cash and to constitute taxable income under the same conditions as cash dividends."

[1] Gains and profits from business can only be taxed under the present Income Tax Act by virtue of ownership of the property from which they are derived. They are not, like excise taxes, based upon the earnings of a business, corporate or otherwise. They are direct taxes, under the decision of the Supreme Court in Pollock v. Farmers' Loan & Trust Co., 158 U. S. 601, 15 Sup. Ct. 912, 39 L. Ed. 1108, and would have to be apportioned, but for the recent enactment of the Sixteenth Amendment to the Constitution. This amendment provides that:

"The Congress shall have power to lay and collect taxes on incomes, from whatever source derived, without apportionment among the several states, and without regard to any census or enumeration."

[2, 3] Now, it is manifest that the stock dividend in question cannot be reached by the Income Tax Act, and could not, even though Congress expressly declared it to be taxable as income, unless it is in fact income. It is likewise true that the word must be presumed to have been used in the constitutional amendment and in the act in the sense in which the Supreme Court had theretofore defined it, if a judicial definition had been clearly given. Kepner v. United States, 195 U. S. at page 124, 24 Sup. Ct. 797, 49 L. Ed. 114, 1 Ann. Cas. 655; Latimer v. United States, 223 U. S. at page 504, 32 Sup. Ct. 242, 56 L. Ed. 526; United States v. Baruch, 223 U. S. 191, 32 Sup. Ct. 306, 56 L. Ed. 399.

I cannot, however, accede to the contention of the plaintiff that stock dividends had received such a clear definition in the case of Gibbons v. Mahon, 136 U. S. 549, 10 Sup. Ct. 1057, 34 L. Ed. 525. That, like most, if not all, of the cases where the question has arisen, involved

the consideration whether stock dividends are principal or income in a litigation between a life tenant and remainderman. The stock dividend was there principally based upon a surplus earned prior to the creation of the trust which received it, and the question involved was not whether or not the dividend was income, but whether it belonged to life tenant or remainderman. The Massachusetts courts, with a numerically small following, have adopted the English rule, and held all stock dividends to belong to the corpus of the trust fund, as between life tenant and remainderman, while New York, New Jersey, New Hampshire, Pennsylvania, Maryland, Wisconsin, and other states of the Union have adopted rules of apportionment. In the Matter of Osborne, 209 N. Y. 450, 103 N. E. 723, 823, 50 L. R. A. (N. S.) 510, Ann. Cas. 1915A, 298, the New York Court of Appeals held that extraordinary dividends, representing accumulated profits, whether distributable in cash or in the form of stock, are to be apportioned between the corpus of the trust and the income, in the proportion in which the surplus thus distributed has been earned before or after the creation of the trust fund.

These varying rules laid down for the guidance of trustees have been to a considerable extent rules of convenient administration. The English and Massachusetts law, which the Supreme Court adopted in Gibbons v. Mahon, supra, has the advantage of avoiding the difficulty and expense of investigating the facts upon which any apportionment must be based.

After the decision of Lowry v. Farmers' Loan & Trust Co., 172 N. Y. 137, 64 N. E. 796, it was thought by many New York trustees that extraordinary dividends, whether of cash or stock, if derived from an accumulation of corporate profits and thus appearing in the corporate resolutions, were distributable to the life tenant, irrespective of when they were earned. New York trustees began to rely upon this decision as laying down a definite, even if a rather unjust, rule, when a series of cases of which the Matter of Osborne, supra, was the culmination, practically, though not in terms, overruled Lowry v. Farmers' Loan & Trust Co., and established the method of apportionment I have mentioned.

The cases relating to distribution of extraordinary dividends by trustees are particularly designed to keep the corpus intact under all circumstances, and to furnish trustees with definite rules of conduct. A court may well hold that extraordinary dividends are always capital, because it thinks that so much trouble and expense is avoided that this consideration outweighs occasional injustice to the life tenant. The Supreme Court laid stress upon this consideration in Gibbons v. Mahon, supra, and Mr. Justice Gray remarked that the method of apportionment could not, " *  *  * without producing great embarrassment and inconvenience, be left open to be tried and determined by the courts  *  *  * and by a distinct and separate investigation *  *  * of the affairs and accounts of the corporation."

I confess that, if strict justice between life tenant and remainderman is to be attained, I can imagine no other method than that of apportionment possible. The criterion adopted in these cases between life

242 F.—45

tenant and remainderman does not necessarily depend on whether the extraordinary dividend is in general income or not, but upon the person to whom it should belong in view of the date of the creation of the trust. For this reason I cannot regard the decision in Gibbons v. Mahon as determining the present issues, or the language of the court there as being at most anything more than a dictum in respect to the matters here involved.

[4] I can give little weight to the argument that the issue of the stock dividend did not affect the market value of the plaintiff's aggregate holdings, and that the distribution of 50 per cent. more stock to the stockholders lessened the market price of their original stock $33\frac{1}{3}$ per cent. This would be true in case of any cash dividend, extraordinary, or even ordinary. The cash distributed, plus the market value of the stock after the dividend was paid, would ordinarily be equivalent in value to the stock before the dividend. But the objection seems impressive that the transaction in no wise affected what the stockholder already had, except to give him additional pieces of paper evidencing his ownership. He does, however, have something different before and after receiving the additional stock. What was before a mere chance that he might receive his share of the surplus in cash dividends and a vague right to secure them if the directors withheld them in a way and to an extent that indicated bad faith is now converted into a permanent interest in the capitalized surplus. He has lost the chance of cash dividends and gained an interest in the corporate enterprise that cannot be taken away. This interest is derived from earnings, and may be really of much greater advantage to the stockholder than the possibility or right which he has lost. It becomes capital of the corporation, but in his hands it is income, and in many respects resembles the common extraordinary cash dividend, accompanied by a right to subscribe for additional stock at par to an amount equivalent to the dividend in cash. To say that this distribution is not income, because he received no cash, and the intermediate step is not taken, is, to my mind, quite to disregard the real nature of the transaction. As Lord Eldon said in Paris v. Paris, 10 Vesey, Jr., 185, when discussing the converse of this case:

"As to the distinction between stock and money that is too thin; and if the law is that this extraordinary profit if given in the shape of stock shall be considered capital it must be capital if given as money."

See Will of Pabst, 146 Wis. 330, 131 N. W. 739.

[5] The contention of plaintiff that corporate dividends are exempt, not only from the normal, but from the super tax, is answered by the requirement in paragraph A, subdivision 2, that for the super-tax there shall be a return of "total net income from all sources, corporate or otherwise." While I think the stock dividend is a dividend, it is taxable, irrespective of whether it technically comes within the meaning of the word, because it represents "gains, profits, and income," and thus comes within the language of the Act. I can see no distinction in theory between the present case and that of Edwards v. Keith, 231 Fed. 111, 145 C. C. A. 298, where the Circuit Court of Appeals for this circuit held that commissions of an insurance broker, earned

before the Income Tax Act was passed, but received after, were subject to the Act, or the recent case of Southern Pacific Co. v. Lowe (D. C.) 238 Fed. 847.

It is not important whether in any given case the present stock dividend would belong to the life tenant or remainderman of a trust. In either event, within the meaning of the Income Tax Law, it must be regarded as income, whether it be added to the corpus of the trust or paid to the beneficiary. The Circuit Court of Appeals for the Eighth Circuit, in the cases of Lynch v. Turrish, 236 Fed. 653, 149 C. C. A. 649, and Lynch v. Hornby, 236 Fed. 661, 149 C. C. A. 657, use language inconsistent with the conclusion I have reached in discussing extraordinary cash dividends paid from moneys received by a corporation prior to the time the Income Tax Act went into effect. These dividends, however, were not derived from corporate earnings, but from appreciation of capital which had been converted into cash. They were, therefore, in no sense income, and were not subject to a tax, as the Supreme Court had already held in the case of Gray v. Darlington, 15 Wall. 63, 21 L. Ed. 45, in construing the old Income Tax Act passed during the Civil War.

The recent case of Brushaber v. Union Pacific R. R., 240 U. S. 1, 36 Sup. Ct. 236, 60 L. Ed. 493, held, following Stockdale v. Insurance Cos., 20 Wall. 323, 22 L. Ed. 348, that the Income Tax Act under consideration could not be assailed because of its retroactive character, and that Congress could impose a tax upon income, even when received during a portion of the year prior to the passage of the act. The stock dividend in question, or an equivalent cash dividend, would not belong to the stockholder until declared by the board of directors, so that it was in no proper sense income of the stockholder until that time.

[6] If deferred payments for commissions, which were earned prior to the date of the act, but not payable until after it went into effect, were taxable as income when received, under the rule laid down in Edwards v. Keith, supra, a fortiori is a dividend taxable as income when received, even though paid out of a surplus accumulated prior to the passage of the act, since at no time is there any legal right to the dividend vested in the stockholder until it has actually been declared. Such was the interpretation passed upon the Wisconsin Income Tax Act by the Supreme Court of that state in the case of Van Dyke v. City of Milwaukee, 159 Wis. 460, 146 N. W. 812, 150 N. W. 509. There a dividend paid after the act went into effect, out of surplus earned prior to that time, was held taxable.

The whole matter turns on the new rights which the stockholder gets by the declaration of the stock dividend. The market value of the totality of his holdings may for the time remain the same as before. But as the New York Court of Appeals, in the case of Williams v. Western Union, 93 N. Y. 162, said when speaking of the surplus of the Western Union before the declaration of a stock dividend:

" * * * It was not beyond the reach of the dividend-making power of the directors," but after the dividend was declared, "so far as the solvency and responsibility of a corporation is concerned, they are increased, * * * where it has a surplus of property to correspond to the amount of shares

issued. In such case the surplus property is secured and impounded for the benefit of the creditors of the corporation and for the public, so that thereafter it can never be legally divided, withdrawn, or dissipated in any way."

The new stock, purchased and paid for out of earnings which have been added permanently to capital, is as truly income of the stockholder as the cash from which it was derived was income of the corporation. This cash has by the action of the directors become capital of the corporation, but in its place the stockholder has received new shares, representing a permanent interest in the company, not subject to abatement by dividend distributions which have a value capable of realization in cash. His rights are different from those he had before the dividend was declared, and the shares of stock evidencing the new appropriation of the earnings and creating the new rights are income.

It may be said that in Edwards v. Keith, supra, moneys representing income had not yet come in, whereas in the case at bar they were in the hands of the corporation. Such a distinction, however, treats the stockholder as though he were entitled to a dividend if the money were in the treasury of the corporation. That such is not the correct rule is a principle permeating the whole law of corporations. To go counter to it here would be to require investigations in every case as to when the property out of which dividends are paid accrued to the corporation itself. Indeed, the very year the Income Tax Act was passed it probably was true that a good many of the corporations which were paying their regular dividends were not earning them, but were paying them out of past earnings. Can it be supposed for a moment that Congress intended to require no income tax of the citizen because the regular dividend he received would not have been received at all, if it had depended upon the earnings of the corporation during that year? The real stumbling block which affects every one, and I confess has affected me, is the taxation of very large accumulations of earnings distributed by corporations after the passage of the act. Certainly a mere matter of size can make no difference in determining whether the property taxed is income or not. The doubt I have felt in reaching my conclusion has not been due to the nature of stock dividends, but to the difficulty which Judge Sanborn found in Lynch v. Turrish, supra, in determining whether Congress intended to tax earnings at all which had accrued in the hands of the corporation prior to the passage of the act, but were distributed later. In other words, in determining whether practically to ignore the corporate form and treat earnings whenever distributed as though declared in law at the time they were earned.

[7] The federal Income Tax Act passed September 8, 1916 (Comp. St. 1916, § 6336b), providing that a cash or stock dividend payable out of earnings since March 1, 1913, shall be considered income, has no bearing upon this case. It may be argued that it was a limitation or an extension of the income taxable by the act under consideration, but in neither event can it be held to define the income which was theretofore taxable.

[8] I can have no doubt that the act of Congress taxing the dividends in question is constitutional, for they possess the real essentials

of income. The action of the officials in assessing and collecting the tax was authorized.

The plaintiff has established no claim to a repayment of it, and the demurrer to his complaint is sustained.