## APPEAL OF HUGH R. WILSON.

Docket No. 2403.   Submitted April 29, 1925.   Decided February 23, 1926.

> Where a corporation in 1920 declares and pays stock dividends, the par value of which exceed the earnings or profits of such corporation accumulated since February 28, 1913, and thereafter in 1920 declares and pays a cash dividend in an amount less than the amount of such earnings or profits, *held*, that under the provisions of section 201 (b) of the Revenue Act of 1918 the cash dividend is deemed to have been made from earnings or profits accumulated subsequent to February 28, 1913, and is to be included as a part of the gross income of the stockholder receiving such cash dividend.

*Karl D. Loos* and *E. Barrett Prettyman, Esqs.*, for the taxpayer.
*Robert A. Littleton, Esq.*, for the Commissioner.

*Fred B. Dodge, Esq. (A. W. Clapp, Esq.*, on brief), as *amicus curiæ*.

### Before STERNHAGEN, PHILLIPS, and LOVE.

The facts are stipulated and present the question whether, under the Revenue Act of 1918, after a corporation has declared stock dividends in amounts exceeding the earnings or profits accumulated after February 28, 1913, it pays cash dividends which are alleged to be out of earnings accumulated prior to March 1, 1913, such cash dividends are taxable income of the stockholder.

#### FINDINGS OF FACT.

The taxpayer during the calendar year 1920 was a stockholder in Wilson Bros., Inc., a domestic corporation. On July 15, 1920, the corporation declared a cash dividend of $122,500 on its common stock, of which the taxpayer received $7,729.75. On October 15, 1920, the corporation declared a cash dividend of $56,036.76 on its preferred stock, of which the taxpayer received $6,346.38. The corporation's profits and dividends from March 1, 1913, to December 31, 1919, inclusive, were as follows:

| Year. | Profits less Federal taxes finally adjusted. | Cash dividends. |
|---|---|---|
| Mar. 1 to Dec. 31, 1913 | $455,512.77 | $200,000.00 |
| Ending Dec. 31, 1914 | 546,402.49 | 200,000.00 |
| Ending Dec. 31, 1915 | 512,495.66 | 600,000.00 |
| Ending Dec. 31, 1916 | 987,694.16 | 600,000.00 |
| Ending Dec. 31, 1917 | 903,007.76 | 850,000.00 |
| Ending Dec. 31, 1918 | 582,174.78 | 700,000.00 |
| Ending Dec. 31, 1919 | 1,043,866.05 | 500,000.00 |
| Total Mar. 1, 1913, to Dec. 31, 1919 | 5,031,153.67 | 3,650,000.00 |

During 1920 the corporation suffered a net loss of $1,329,986.70, which is equivalent to $3,633.84 per day. Multiplying this per diem average by 197 days from January 1, 1920, to July 15, 1920, the net loss for that period was $715,866.48; and for the 92 days from July 15, 1920, to October 15, 1920, the net loss was $334,313.28. Dividends were declared in 1920 as follows:

| | |
|---|---|
| May 17, 1920, stock dividend_____ | $1,000,000.00 |
| June 10, 1920, stock dividend_____ | 500,000.00 |
| July 15, 1920, stock dividend_____ | 3,500,000.00 |
| July 15, 1920, cash dividend_____ | 122,500.00 |
| Oct. 15, 1920, cash dividend_____ | 56,036.70 |

The corporation prior to March 1, 1913, had accumulated earnings or profits of not less than $178,536.70, or an amount sufficient to include the amount of the cash dividends of July 15, 1920, and October 15, 1920. The Commissioner determined a deficiency, and in so doing included in the taxpayer's income the aforesaid amounts of $7,729.75 and $6,346.38 received by the taxpayer on July 15, 1920, and October 15, 1920, as cash dividends from the corporation.

DECISION.

The determination of the Commissioner is approved.

OPINION.

PHILLIPS: This appeal involves the construction of section 201 of the Revenue Act of 1918, and particularly paragraph (b) thereof, in the light of the decision of the Supreme Court in *Eisner* v. *Macomber*, 252 U. S. 189; 40 Sup. Ct. 189; 3 Am. Fed. Tax Rep. 3020. This section, so far as it is material to this appeal, provided:

SEC. 201. (a) That the term "dividend" when used in this title * * * means (1) any distribution made by a corporation, * * * to its shareholders or members, whether in cash or in other property or in stock of the corporation, out of its earnings or profits accumulated since February 28, 1913, * * *.

(b) Any distribution shall be deemed to have been made from earnings or profits unless all earnings and profits have first been distributed. Any distribution made in the year 1918 or any year thereafter shall be deemed to have been made from earnings or profits accumulated since February 28, 1913, * * *; but any earnings or profits accumulated prior to March 1, 1913, may be distributed in stock dividends or otherwise, exempt from the tax, after the earnings and profits accumulated since February 28, 1913, have been distributed.

(c) A dividend paid in stock of the corporation shall be considered income to the amount of the earnings or profits distributed. * * *.

The determination of the appeal turns upon the proper interpretation of the words "any distribution" in paragraph (b) of this

section. If these words include the amount of earnings or profits capitalized by a stock dividend, it follows from the findings of fact that all earnings of Wilson Bros., Inc., subsequent to February 28, 1913, were absorbed by the cash dividends of years prior to 1920 and the 1920 stock dividends, with the result that the 1920 cash dividends are not to be deemed to have been made from earnings or profits accumulated since February 28, 1913. This is the construction for which the taxpayer contends.

These provisions of the 1918 Act are substantially similar to those of the Revenue Act of 1916, as amended by the Revenue Act of 1917, which provided:

SEC. 31. (a) That the term "dividends" as used in this title shall be held to mean any distribution made or ordered to be made by a corporation, joint-stock company, association. or insurance company, out of its earnings or profits accrued since March first, nineteen hundred and thirteen, and payable to its shareholders, whether in cash or in stock of the corporation, joint-stock company, association, or insurance company, which stock dividend shall be considered income, to the amount of the earnings or profits so distributed.

(b) Any distribution made to the shareholders or members of a corporation, joint-stock company, or association, or insurance company, in the year nineteen hundred and seventeen, or subsequent tax years, shall be deemed to have been made from the most recently accumulated undivided profits or surplus, and shall constitute a part of the annual income of the distributee for the year in which received, and shall be taxed to the distributee at the rates prescribed by law for the years in which such profits or surplus were accumulated by the corporation, joint-stock company, association, or insurance company, but nothing herein shall be construed as taxing any earnings or profits accrued prior to March first, nineteen hundred and thirteen, but such earnings or profits may be distributed in stock dividends or otherwise, exempt from the tax, after the distribution of earnings and profits accrued since March first, nineteen hundred and thirteen, has been made/ This subdivision shall not apply to any distribution made prior to August sixth, nineteen hundred and seventeen, out of earnings or profits accrued prior to March first, nineteen hundred and thirteen.

It was this section of the 1916 Act which was the subject of the decision of the Supreme Court in *Eisner* v. *Macomber, supra.* In that case the court held that a stock dividend is not income, that it distributes no earnings or profits but on the contrary capitalizes such earnings or profits and makes them unavailable for actual distribution. In the course of its reasoning, and as the basis for its decision, the court said, in part:

This, however, is no more than a book adjustment, in essence not a dividend but rather the opposite; no part of the assets of the company is separated from the common fund, nothing distributed except paper certificates that evidence an antecedent increase in the value of the stockholder's capital interest resulting from an accumulation of profits by the company, * * *. In order to make the adjustment, a charge is made against surplus account with corresponding credit to capital stock account, equal to the proposed

" dividend "; the new stock is issued against this and the certificates delivered to the existing stockholders in proportion to their previous holdings.

\*          \*          \*          \*          \*          \*          \*

A " stock dividend " shows that the company's accumulated profits have been capitalized, instead of distributed to the stockholders or retained as surplus available for distribution in money or in kind should opportunity offer. Far from being a realization of profits of the stockholder, it tends rather to postpone such realization, in that the fund represented by the new stock has been transferred from surplus to capital, and no longer is available for actual distribution.

\*          \*          \*          \*          \*          \*          \*

Thus, the Government contends that the tax " is levied on income derived from corporate earnings," when in truth the stockholder has " derived " nothing except paper certificates which, so far as they have any effect, deny him present participation in such earnings. It contends that the tax may be laid when earnings " are received by the stockholder," whereas he has received none; that the profits are " distributed by means of a stock dividend," although a stock dividend distributes no profits; that under the Act of 1916 " the tax is on the stockholder's share in corporate earnings," when in truth a stockholder has no such share, and receives none in a stock dividend; that " the profits are segregated from his former capital, and he has a separate certificate representing his invested profits or gains," whereas there has been no segregation of profits, nor has he any separate certificate representing a personal gain, since the certificates, new and old, are alike in what they represent—a capital interest in the entire concerns of the corporation.

\*          \*          \*          \*          \*          \*          \*

The Government's reliance upon the supposed analogy between a dividend of the corporation's own shares and one made by distributing shares owned by it in the stock of another company, calls for no comment beyond the statement that the latter distributes assets of the company among the shareholders while the former does not; and for no citation of authority except *Peabody* v. *Eisner*, 247 U. S. 347, 349–350.

It is urged on behalf of the taxpayer that the statute laid down a rule of construction by which stock dividends, as well as other dividends, were to be deemed to distribute the earnings and profits of the corporation to the extent thereof, and that this construction is not affected by the decision in *Eisner* v. *Macomber*, *supra*, which passed upon the constitutionality of a tax upon stock dividends as income and did not pass upon the right of Congress to provide, as a matter of construction, that stock dividends should be deemed to distribute earnings and profits. Congress, it is urged, had the right and power to declare that a stock dividend should be deemed for the purpose of the Act to be a distribution of earnings and profits, and a distribution of earnings and profits accumulated subsequent to February 28, 1913, and its power and right to do this was not at all dependent upon its power to tax a stock dividend as income. The purpose of subdivision (b), it is contended, was to enact an absolute and conclusive rule for the allocation of distributions for the purpose of determining when and under what circumstances

a distribution might be made exempt from the tax, and this rule of construction is not changed by reason of the decision that stock dividends are not taxable income to the recipient. The further contention is that, reading the section as a whole, Congress intended the words " any distribution" to include a stock dividend, and that this intention must be the same to-day for the purposes of construction as it was the day the Act was passed.

Much of the argument advanced on behalf of the taxpayer may be conceded. The decision of this appeal, as we view it, depends upon the construction to be placed upon the words " any distribution" appearing in subdivision (b). For that purpose an examination of the situation existing at the time of the passage of the 1917 and 1918 Acts is proper and helpful.

Prior to the passage of the 1917 Act, amending the 1916 Act, as set out above, the Supreme Court had handed down its decision in the case of *Gibbons* v. *Mahon*, 136 U. S. 549; 10 Sup. Ct. 1057. In that case the court had before it the allocation of a stock dividend as between life tenant and remainderman of a trust. In the course of its opinion in that case the Supreme Court had occasion to go very thoroughly into the question of the character of a stock dividend. It quoted with approval the opinion of the court below to the effect that—

A dividend is something with which the corporation parts, but it parted with nothing in issuing this new stock. It simply gave a new evidence of ownership which already existed.

and from *Williams* v. *Western Union Telegraph Co.*, 93 N. Y. 162, as follows:

A stock dividend does not distribute property, but simply dilutes the shares as they existed before.

Referring to the resolution voting the stock dividend, the court states:

The resolution is clearly an apportionment of the new shares as representing capital, and not a distribution or division of income.

At the time the 1917 Act was under discussion in Congress, there was much doubt whether a stock dividend distributed any profit of the corporation so as to render the recipient subject to an income tax thereon. The District Court for the Southern District of New York, in *Towne* v. *Eisner*, 242 Fed. 702; 1 Am. Fed. Tax Rep. 811, had decided that stock dividends were taxable, and that case was pending before the Supreme Court on a writ of error. Prior to the date when the 1918 Act was drafted and introduced into Congress as a bill, the Supreme Court had reversed the District Court in *Towne* v. *Eisner*, holding that a stock dividend was not income, and quoting from and

affirming the position taken by it in *Gibbons* v. *Mahon*, *supra*. *Towne* v. *Eisner*, 245 U. S. 418; 38 Sup. Ct. 158; 3 Am. Fed. Tax Rep. 2959.

*Towne* v. *Eisner* arose under the 1913 Act, which did not specifically provide for the taxation of stock dividends. The Commissioner interpreted the decision of the Supreme Court as passing upon the construction of the 1913 Act, and not upon the constitutionality of a tax on stock dividends as income. Prior to the introduction in Congress of the Revenue Bill of 1918, the United States District Court for the Southern District of New York, in *Macomber* v. *Eisner*, had decided that the 1916 Act, expressly providing that stock dividends were subject to income tax in the hands of the recipient, was unconstitutional with respect to such provision, basing its decision upon the decision of the Supreme Court in *Towne* v. *Eisner*, *supra*. At the time that the 1918 Act was under discussion in Congress, the *Macomber* case was pending before the Supreme Court on a writ of error.

In this state of uncertainty, no one could say with authority whether a stock dividend was taxable or whether it distributed any of the property of a corporation to its stockholders. It was in such circumstances that the 1918 Act was drafted and enacted, and it is in the light of such circumstances that the Act must be construed.

Two purposes clearly appear in the 1918 Act: (1) The earnings of a corporation accumulated after February 28, 1913, were to be subject to tax when distributed to stockholders, and (2) stock dividends were to be taxed to the extent to which they distributed such profits.

It must be assumed that the persons responsible for the drafting of the 1918 Act were familiar with the decisions in *Gibbons* v. *Mahon*, *supra*; *Towne* v. *Eisner*, *supra*; and *Macomber* v. *Eisner*, *supra*. At best, it was doubtful whether the second purpose of Congress (to tax stock dividends) could be accomplished. The Supreme Court had already declared that the declaration of a stock dividend was not a distribution or division of the income of the corporation as between life tenant and remainderman. The word "distribution" used in the Act appears to have been deliberately chosen in the light of the language used by the court in *Gibbons* v. *Mahon*, *supra*, either to include or exclude a stock dividend, dependent upon whether or not such a dividend was a distribution. Nowhere in the Act are the words "any distribution" defined. Nowhere is a stock dividend stated to be a distribution. The Act assumes that a stock dividend is a distribution of property by a corporaion to its stockholders. It is only if this assumption be correct that a stock dividend is to be deemed to be made from earnings and profits

accumulated since February 28, 1913, for it is clear from the Act that it is only where a distribution takes place that any presumption arises as to the source of such distribution.

It is contended that the 1918 Act, while not defining the words "any distribution," plainly intended that a stock dividend should be included within those words. It is our opinion that the Act had the twofold purpose mentioned above, and that the words "any distribution" were intended by the draftsman of the Act and by Congress to include only what the words import, namely, a distribution of property by a corporation to its stockholders, and that, a stock dividend having been held not to be a distribution of property by a corporation to its stockholders, it does not fall within the word or intent of the statute.

Taxpayer cites the provisions of section 1402 of the Revenue Act of 1918 providing:

SEC. 1402. That if any clause, sentence, paragraph, or part of this Act shall for any reason be adjudged by any court of competent jurisdiction to be invalid, such judgment shall not affect, impair, or invalidate the remainder of this Act, but shall be confined in its operation to the clause, sentence, paragraph, or part thereof directly involved in the controversy in which such judgment has been rendered;

and contends that the decision in *Eisner* v. *Macomber* invalidated the attempt to tax a stock dividend as income, but that it affects no other provision of the statute. Admitting this to be so, it is of no avail unless we find that the Act includes a stock dividend within the words "any distribution." We have pointed out above that the words "any distribution" are not defined, and that, in our opinion, the words were intended to include only what was in fact a distribution, leaving it for the courts to determine what was and what was not included within that term. Entirely aside from the decision that so much of the law as taxes a stock dividend as income is unconstitutional, the Supreme Court has pointed out that a stock dividend does not, in fact, distribute any property, and for that reason such a dividend does not, we believe, fall within the words "any distribution."

It is further urged on behalf of the taxpayer that a stock dividend converts the surplus of the corporation into capital and that, under the Act, it must be assumed that it is the most recently accumulated earnings or surplus that are to be converted. So to construe the Act would defeat the very purpose of Congress to tax all distributions of property made by a corporation to its stockholders to the extent of the earnings or profits accumulated after February 28, 1913. Congress, having power to tax all dividends irrespective of whether paid from earnings accumulated subsequent or prior to March 1, 1913 (*Lynch* v. *Hornby*, 247 U. S. 339, 38 Sup. Ct. 543,

3 Am. Fed. Tax Rep. 2992), surely has power to prescribe, and has prescribed, the conditions under which dividends shall be exempt. Furthermore, the argument advanced by the taxpayer loses sight of the fact, pointed out in *Eisner* v. *Macomber, supra*, that the capitalization of surplus is the opposite of a distribution, removing such surplus from any possibility of distribution as a dividend.

On reference to the BOARD, TRUSSELL dissents.