APPEALS OF GEORGE W. MEGEATH ET AL.[1]

Docket Nos. 7118, 2815, 7086, 7119, 7959, 9248.    Promulgated January 28, 1927.

1. *Held,* upon the evidence, that the cash dividend of $344,050 distributed by the Sheridan Coal Co. on April 16, 1920, was paid out of earnings accumulated after February 28, 1913, and that the entire amounts received by the petitioners who participated therein are taxable to them.

---

[1] The following appeals were consolidated with the above and are decided herewith: S. A. Megeath, No. 2815; Alvah P. Whitmore, No. 7086; Ida J. Megeath, No. 7119; Leonard Kniffin, No. 7959; and Samuel A. Megeath, No. 9248.

2. Stock dividends are not distributions of corporate earnings or profits. *Eisner* v. *Macomber*, 252 U. S. 189. Where a corporation in 1917 and 1918 declares and pays stock dividends which are charged against surplus, and thereafter, in 1920, declares and pays a cash dividend, in an amount which may exceed the reduced surplus plus the earnings of the year 1920 to the dividend date,. but less than the earnings accumulated after February 28, 1913, and remaining undistributed, *held*, that under the provisions of section 201 (b) of the Revenue Act of 1918 the cash dividend is deemed to have been made entirely out of earnings or profits accumulated after February 28, 1913, and is to be included as a part of the gross income of the stockholders receiving such cash dividend. *Appeal of Hugh R. Wilson*, 3 B. T. A. 957.

3. In the absence of evidence which will identify certain shares of corporate capital stock, sold or exchanged, with specific purchases or other acts vesting ownership thereof in the vendor, such shares, so sold or exchanged, will be deemed to be those first acquired by the vendor. *Towne* v. *McElligott*, 274 Fed. 960, 963.

4. March 1, 1913, value of certain shares of corporate capital stock determined for the purpose of computing the gain derived from the sale of such shares of stock.

5. Traveling expenses incurred by an individual, while on a business trip, incident to the transportation and maintenance of his wife and nurse who accompanied him, are of a personal nature and not allowable as deductions for income-tax purposes.

*Jay C. Halls, Esq.*, and *L. Dana Latham, Esq.*, for the petitioners. *J. W. Fisher, Esq.*, and *George G. Witter, Esq.*, for the Commissioner.

These appeals are from determinations by the Commissioner of deficiencies in income tax for the calendar years and in the amounts as follows:

| | |
|---|---|
| S. A. Megeath, 1919 | $7,707.17 |
| Alvah P. Whitmore, 1920 | 346.94 |
| George W. Megeath. 1920 and 1921 | 4,076.21 |
| Ida J. Megeath, 1920 | 64,618.66 |
| Leonard Kniffin, 1920 | 1,408.00 |
| Samuel A. Megeath, 1920 | 2,011.73 |

By agreement of the parties the appeals are consolidated. With the exception of the appeal of S. A. Megeath, Docket No. 2815, all of the appeals involve the question whether dividends distributed by the Sheridan Coal Co. and received by the petitioners in 1920 are taxable as distributions made from the corporate profits accumulated after February 28, 1913. The appeals of S. A. Megeath, Docket No. 2815, and Ida J. Megeath, Docket No. 7119, involve the question as to the gain derived from the sale of certain shares of stock of the Sheridan Coal Co. The appeal of George W. Megeath also raises an issue as to a deduction for traveling expenses claimed in his return for the year 1921.

FINDINGS OF FACT.

The petitioners in 1920 were stockholders of the Sheridan Coal Co. This company was organized in 1903 and has since been engaged in the business of mining coal.

On April 16, 1920, the Sheridan Coal Co. distributed to its stockholders a cash dividend of $344,050, of which the petitioners received the following amounts:

| | |
|---|---:|
| Alvah P. Whitmore | $5,000.00 |
| George W. Megeath | 16,775.00 |
| Ida J. Megeath | 91,125.00 |
| Leonard Kniffin | 4,900.00 |
| Samuel A. Megeath | 18,200.00 |

The book surplus of the Sheridan Coal Co. at December 31, 1919, was $868,632.41; and certain adjustments made by the Commissioner in the book accounts, which adjustments are not contested by the petitioners, increased it to $931,278.14. Subsequent to December 31, 1919, additional income and profits taxes for the years 1916 to 1918, inclusive, in the amount of $227,659.78, were assessed against and paid by the Sheridan Coal Co. The income and profits tax of the Sheridan Coal Co. for the year 1919, as determined by the Commissioner in a sixty-day letter addressed to this company, under date of May 22, 1925, is $3,010.92. Neither the additional assessments for the years 1916 to 1918, inclusive, nor the tax liability for the year 1919, are reflected in the adjusted surplus of $931,278.14.

The net income of the Sheridan Coal Co. from all sources for the year 1920, as shown by the report dated December 9, 1924, of a revenue agent who examined the books of account, is $301,517.09. The net income shown by the books of account is $308,376.77. The difference of $6,859.68 is accounted for as follows:

| | |
|---|---:|
| Additional depreciation allowed in revenue agent's report | $2,115.32 |
| Additional depletion allowed in revenue agent's report | 8,290.04 |
| | 10,405.36 |
| Net increase in fire and liability insurance reserves disallowed by revenue agent as deduction from income | 3,545.68 |
| Difference | 6,859.68 |

Cash dividends distributed by the Sheridan Coal Co. during the period January 1 to April 15, 1920, amounted to $165,144.

At or about the time of its organization in 1903, the Sheridan Coal Co. acquired certain coal lands in Wyoming at a cost of $680,000. The March 1, 1913, value of these lands was $1,037,780. Subsequent to March 1, 1913, additional lands were acquired at a cost of $16,000.

All of these lands, including the improvements thereon, were sold in 1919 for the sum of $1,250,000. The expenses in connection with the sale amounted to $42,500. At the time of the sale, the lands in question were carried on the books of account at a value of $850,-116.52 and the improvements thereon at a value of $300,290.47. The book value of the lands included appreciation in the amount of $300,000, which was written on the books during the year 1917. The total depletion charged off on the books in respect of the coal lands in question amounted to $126,233.48. The total depletion determined by the Commissioner, as shown by a sixty-day letter addressed to the company under date of May 22, 1925, is, upon the basis of cost, $26,072.89, and upon the basis of the March 1, 1913, value $42,732.17. The total depreciation charged off by the company for the years 1917 to 1919, inclusive, on the improvements is $206,429.41. The total depreciation allowed by the Commissioner for the same years, as shown by the sixty-day letter referred to, is $128,772.41.

The surplus of the Sheridan Coal Co. at December 31, 1912, as shown by its books of account, was $67,893.15. It included appreciation of the stock of the Roundup Coal Mining Co. in the amount of $78,000 which had been written on the books of account in June, 1910. It did not include the excess of the March 1, 1913, value of the lands over the cost thereof. The earnings of the Sheridan Coal Co. for the year 1913 amounted to $56,592.53. A cash dividend of $2,925 was paid on the preferred stock at February 1, 1913.

In 1917 the Sheridan Coal Co. distributed a stock dividend of $200,000 and a similar distribution of like amount was made in the year 1918.

None of the petitioners who participated in the dividend which the Sheridan Coal Co. distributed in cash on April 16, 1920, included the amounts received by them from that source in their income-tax returns. The Commissioner has held that the whole amount of the dividend was distributed out of earnings accumulated after February 28, 1913, and that those of the petitioners who participated therein are liable for tax upon the respective amounts received by them from this source.

In the year 1908, Ida J. Megeath acquired by gift 40 shares of the capital stock of the Sheridan Coal Co. Subsequent to March 1, 1913, she acquired, either by gift or by way of stock dividends, additional shares of this stock as follows:

|  | Shares. |
|---|---|
| December, 1916, by gift | 100 |
| August, 1917, by gift | 2,500 |
| December, 1917 } January, 1918 } by stock dividend | 1,056 |

In 1920 she exchanged 786 shares of the stock of the Sheridan Coal Co. for a like number of shares of the capital stock of the Megeath Coal Co., and in the same year sold the Megeath Coal Co. stock for $135 per share.

On March 1, 1913, S. A. Megeath owned 1,198 shares of the capital stock of the Sheridan Coal Co. which he had acquired by bequest and purchased prior to that date. In December, 1917, and again in January, 1918, he received a stock dividend of 239 shares, a total of 478 shares from this source, of the capital stock of the Sheridan Coal Co. In 1919 he sold 722 shares for the sum of $72,285.

The net income of the Sheridan Coal Co. for the years 1904 to 1920, inclusive, as shown by its books of account, was as follows:

| Year. | Net income. | Year. | Net income. |
|---|---|---|---|
| Fiscal 1904 | $186,528.12 | Calendar 1912 | $62,410.58 |
| Fiscal 1905 | 84,794.62 | Calendar 1913 | 56,592.53 |
| Fiscal 1906 | 117,625.28 | Calendar 1914 | 14,789.38 |
| Fiscal 1907 | 190,395.32 | Calendar 1915 | 60,922.01 |
| Fiscal 1908 | 281,356.73 | Calendar 1916 | 227,443.47 |
| Fiscal 1909 | 79,505.24 | Calendar 1917 | 523,067.95 |
| Fiscal 1910 | 134,286.10 | Calendar 1918 | 295,576.77 |
| Calendar 1910 (7 months) | | Calendar 1919 | 275,436.41 |
| Calendar 1911 (loss) | 20,818.13 | Calendar 1920 | 308,376.77 |

The net income for the seven months ended December 31, 1910, is not shown; the net income reported in the Federal income-tax return for that period is $150,220.85. The loss of $20,818.13 for the calendar year 1911 is occasioned by an erroneous charge-off of $59,365.25. The net income reported in the Federal income-tax return for the year 1911 is $38,547.12.

The books of the Sheridan Coal Co. show that dividends have been paid on the preferred stock as follows:

| Date. | Amount. | Date. | Amount. |
|---|---|---|---|
| May 31, 1907 | $8,211.43 | December 31, 1912 | $9,750.00 |
| May 31, 1908 | 7,113.29 | December 31, 1913 | 11,700.00 |
| May 31, 1909 | 9,895.83 | December 31, 1914 | 11,700.00 |
| May 31, 1910 | 11,700.00 | December 31, 1915 | 11,700.00 |
| December 31, 1910 | 6,825.00 | December 31, 1916 | 11,700.00 |
| December 31, 1911 | 11,700.00 | December 31, 1917 | 6,852.83 |

The outstanding capital stock of the Sheridan Coal Co. for the years 1904 to 1920 was as follows:

| Year. | Common stock. | Preferred stock. |
|---|---|---|
| 1904 | $901,800 | None. |
| 1905 | 998,100 | None. |
| 1906 | 998,100 | $18,150 |
| 1907 | 998,100 | 128,100 |
| 1908 | 998,100 | 100,000 |
| 1909 to 1916, inclusive | 1,000,000 | 195,000 |
| 1917 | 1,200,000 | None. |
| 1918 to 1920, inclusive | 1,376,200 | None. |

In 1921, George W. Megeath made a trip to Europe and later in the same year a trip to California. Both of these trips were made in an effort to find a market for the coke produced by the Sheridan Coal Co. He paid the expenses of the trip himself and was not reimbursed by the company. On both of the trips he was accompanied by his wife and his nurse. He had been in poor health and had been attended by a nurse for a number of years. It was at the direction of his physician that the nurse accompanied him on his trips in 1921. For the steamship passage of himself, wife, and nurse to Europe and return Megeath paid the steamship company $5,000. In his return for the year 1921 Megeath claimed this item of $5,000 and the expenses of his trip to California in the amount of $6,000 as deductions from income.

### OPINION.

ARUNDELL: The appeals of the several petitioners have been consolidated and are considered and disposed of herewith. In all, four issues are presented by these appeals for our consideration and they will be considered and disposed of in the order in which the facts pertaining thereto are outlined in the findings of fact.

The first issue, which is common to all the appeals except that of S. A. Megeath, Docket No. 2815, is whether the distribution made by the Sheridan Coal Co. on April 16, 1920, in cash in the amount of $344,050, was paid out of the corporate earnings of that company accumulated after February 28, 1913, or whether a part thereof represents a distribution of corporate earnings accumulated prior to March 1, 1913. To the extent that the distribution was made out of earnings accumulated after February 28, 1913, it is, under the provisions of section 201(a) of the Revenue Act of 1918, a dividend, and is taxable to the recipients. Any part of the distribution which may have been made out of corporate earnings accumulated prior to March 1, 1913, is, under subdivision (b) of the same section, exempt from the tax. There is no dispute between the parties on any question of the law applicable to the facts. The only issue is as to the source from which the earnings distributed on April 16, 1920, were derived.

The surplus of the Sheridan Coal Co. on December 31, 1919, according to the books of account, was $868,632.41, but this was increased by the Commissioner to $931,278.14 through adjustments in the book accounts which are not contested by the petitioners. In addition to the liabilities which appeared on the books of the Sheridan Coal Co. it was indebted to the Government for additional income and profits taxes for the years prior to 1919 in the amount of $227,659.78, while its liability for taxes for the year 1919, as deter-

mined by the Commissioner in a sixty-day letter addressed to the company under date of May 22, 1925, amounted to $3,010.92, a total liability for accrued taxes of $230,670.70. The correct surplus of the Sheridan Coal Co. at December 31, 1919, was, therefore, the Commissioner's adjusted surplus less the liability for accrued taxes, or the sum of $700,607.44. The surplus at April 16, 1920, the date of the distribution, was the corrected surplus at December 31, 1919, plus the earnings from January 1, 1920, less the dividends paid between January 1 and April 16, 1920. A revenue agent's report dated December 9, 1924, which is in evidence, discloses total earnings of the Sheridan Coal Co. for the year 1920 in the sum of $301,517.09. The net income according to the books of account is $308,376.77. The difference of $6,859.68 is due to the agent's allowance of additional depletion and depreciation and his disallowance as a deduction from income of the net increase in the fire and liability insurance reserves. The agent's adjustments have not been contested by the petitioners. As a matter of fact, counsel for petitioners in their brief adopt the revenue agent's figures as correct for the purposes of these appeals. Spreading the net income of $301,517.09 ratably over the year 1920, the earnings for the period January 1 to April 15, 1920, are $87,324.62. The dividends paid by the Sheridan Coal Co. between January 1 and April 15, 1920, amounted to $165,144. Adding to the corrected surplus of $700,607.44 at December 31, 1919, the earnings of $87,324.62 for the period January 1 to April 15, 1920, and deducting the dividends of $165,144, we conclude that the surplus at April 16, 1920, the date of the distribution, was the sum of $622,788.06. We pass now to the determination of the source from whence this surplus was derived.

On December 31, 1912, the surplus of the Sheridan Coal Co. according to the books of account, was $67,893.15. At that date the capital stock of the Roundup Coal Mining Co. was carried on the books at $104,000, appreciation in the amount of $78,000 having been written on the books in June, 1910. There is no evidence before us that the March 1, 1913, value of this stock was in excess of cost, which was $26,000. Deducting this appreciation of $78,000 from the surplus, we conclude there was a deficit at December 31, 1912, of $10,106.85. The earnings of the year 1913 amounted to $56,592.53, which, when spread ratably over the year, indicate earnings of $9,432.09 for the period January 1 to February 28, 1913. Deducting the earnings of $9,342.09 from the deficit of $10,106.85 and adding the dividend paid on February 1, 1913, in the amount of $2,925, to the remainder, we conclude that the Sheridan Coal Co. had a deficit of $3,599.76 at March 1, 1913. It is apparent, therefore, that the

surplus of $622,788.06 at April 16, 1920, does not include any earnings accumulated prior to March 1, 1913.

The lands which the Sheridan Coal Co. acquired at the time of organization were purchased at a cost of $680,000. The March 1, 1913, value of these same lands, it is agreed, was $1,037,780, and the excess value at that date over cost was $357,780. Since these lands were sold during the year 1919, it is apparent that any gain resulting from the sale thereof is reflected in the surplus at April 16, 1920. If the sale resulted in a profit when the computation is made upon the basis of cost, then, to the extent that the profit represents a realization of the March 1, 1913, value in excess of cost, it is to be treated as earnings accumulated prior to March 1, 1913, and the amount of such realization should be deducted from the surplus at April 16, 1920, in arriving at the amount of the earnings accumulated since March 1, 1913, available for distribution. In the sixty-day letter of May 22, 1925, addressed to the Sheridan Coal Co. the Commissioner determined that the profit upon the sale of the land and improvements was, when computed upon the basis of cost, $321,743.43. The Commissioner's determination is based upon cost, less depletion, of $585,466.10 for the lands, and a cost, less depreciation of $300,290.47 for the improvements. These costs have been adopted by the petitioners for the purpose of computing the gain or loss resulting from the sale. The parties are in agreement that the March 1, 1913, value of the lands, plus the cost of subsequent additions, and less depletion based upon that value, is $1,011,047.83. The profit determined by the Commissioner represents the difference between the selling price, less expenses of selling, and the total cost of the properties sold, the computation being as follows:

| | | |
|---|---:|---:|
| Selling price | $1,250,000.00 | |
| Less: Selling expense | 42,500.00 | |
| Net selling price | | $1,207,500.00 |
| Deduct: | | |
| Cost of lands | 585,466.10 | |
| Cost of improvements | 300,290.47 | |
| Total cost of land and improvements | | 885,756.57 |
| Profit | | 321,743.43 |

The petitioners contend that gain or loss should be determined by a separate computation for the lands and a separate computation for the improvements, by assigning as the selling price of the land so much of the net selling price as equals the March 1, 1913, value, plus additions and less depletion, of the land, and assigning the balance

of the selling price to the improvements. Their computations are as follows:

| | |
|---|---|
| Net selling price | $1,207,500.00 |
| Selling price of land (March 1, 1913, value plus additions and less depletion) | 1,011,047.83 |
| Selling price of improvements | 196,452.17 |
| Selling price of lands | 1,011,047.83 |
| Less: Cost of lands | 585,466.10 |
| Profit from sale of lands | 425,581.73 |
| Cost of improvements | 300,290.47 |
| Less: Selling price of improvements | 196,452.17 |
| Loss from sale of improvements | 103,838.30 |

The petitioners then reason that since the selling price of the lands does not exceed the March 1, 1913, value thereof, plus additions and less depletion, the profit of $425,581.73 from the sale of the lands is entirely a realization of the March 1, 1913, value in excess of cost, which should be deducted from the surplus at April 16, 1920, in determining the amount of earnings accumulated after March 1, 1913, available for distribution. The petitioners also contend that the loss sustained upon the sale of the improvements should be deducted from the surplus at April 16, 1920, in arriving at the amount of the earnings accumulated after March 1, 1913, available for distribution. By deducting the profit from the sale of the lands and the loss from the sale of the improvements the petitioners arrive at a balance in the surplus account less than the amount of the dividend of April 16, 1920; hence, they contend that a portion of the dividend was paid out of earnings accumulated prior to March 1, 1913, and that a proportionate part of the dividend received by each of them is nontaxable.

It will be noted that if the loss from the sale of the improvements is deducted from the gain from the sale of the lands, as such loss and gain have been computed by the petitioners, the profit, taking the transaction as a whole, is $321,743.43, which is precisely the profit which the Commissioner has determined. However, for reasons which will hereafter appear, we believe that the profit realized by the Sheridan Coal Co. from the sale in question was an entirely different amount. The petitioners' contention that the gain and the loss resulting from the sale of the lands and improvements, respectively, should be computed separately, is without merit. The evidence does not justify a finding that there was a sale of the lands and a sale of the improvements in the sense that there were two distinct and entirely different transactions. On the other hand, the evidence shows

that the lands and the improvements were sold together for a lump sum of $1,250,000; and any arbitrary allocation of the selling price as between the lands and the improvements is unwarranted. Rather, the gain or loss resulting from the sale must be computed upon the basis of what in fact it was, a sale of the lands and improvements by one and the same transaction.

; We have previously pointed out that, upon the basis of a depleted cost for the lands of $585,466.10 and a depreciated cost for the improvements of $300,290.47, the Commissioner has determined, in the sixty-day letter to the Sheridan Coal Co., that the sale resulted in a profit of $321,743.43. The petitioners have adopted these same costs in computing the profit from the sale for the purposes of their appeals. The evidence, however, convinces us that these costs are incorrect and may not be used as the basis for the determination of the profit resulting from the sale. The Commissioner's computation of the cost of the lands, as contained in the sixty-day letter to the Sheridan Coal Co., shows an addition to the cost of the sum of $35,349.58, representing the amount of depletion charged off on the books of the Sheridan Coal Co. in excess of the total depletion allowed by the Commissioner. The evidence shows that the total depletion charged off on the books of the Sheridan Coal Co. amounted to $126,233.48, and that the total depletion allowed by the Commissioner on the basis of cost is $26,072.89. Therefore, the excessive depletion charged off on the books is $100,160.59, which is $64,811.01 in excess of the amount restored by the Commissioner. The correct cost of the lands is the cost determined by the Commissioner in the sixty-day letter to the Sheridan Coal Co., to wit, $585,466.10 plus the sum of $64,811.01, or $650,277.11. The Commissioner adopted the book value of the improvements as the cost thereof. The evidence shows that during the years 1917 to 1919, inclusive, the total depreciation charged off on the books of the Sheridan Coal Co. on the improvements amounted to $206,429.41 and that the total depreciation allowed by the Commissioner is $128,772.41. Therefore, the excessive depreciation charged off on the books is $77,657, which, when added to the book value of the improvements, to wit, $300,-290.47, results in a corrected cost for the improvements of $377,-947.47. The total corrected cost of the lands and improvements is $1,028,224.58, which, when deducted from the net selling price of $1,207,500, indicates a profit upon the entire transaction of $179,-275.42. Since the profit is less than the excess of the March 1, 1913, value over cost, the entire amount thereof is to be treated as earnings accumulated prior to March 1, 1913. Deducting the profit of $179,275.42 from the surplus of $622,788.06, leaves a balance of $443,512.64, representing earnings accumulated after March 1, 1913,

which is in excess of the dividend of $344,050 distributed by the Sheridan Coal Co. in cash on April 16, 1920. Therefore, the entire amounts received by those of the petitioners who participated in the dividend were distributed out of earnings accumulated after February 28, 1913, and are taxable to them.

Though our conclusion is that there were sufficient earnings accumulated after February 28, 1913, out of which the Sheridan Coal Co. was enabled to make the distribution of April 16, 1920, there is the further consideration that, though it might be conceded that the petitioners' computations are entirely correct, and that after the deduction of so much of the profit from the sale as represented a realization of March 1, 1913, appreciation there remained in the surplus earnings accumulated after February 28, 1913, in the amount of $6,043.39 only, our conclusion would be no different, since in arriving at the earnings available for distribution the petitioners have excluded from the surplus account the stock dividends paid in December, 1917, and January, 1918, in the total amount of $400,000. This it can not do, as decided by the Circuit Court of Appeals for the Fifth Circuit, in *Walker* v. *Hopkins*, 12 Fed. (2d) 262, and by this Board in the *Appeal of Hugh R. Wilson*, 3 B. T. A. 957, following the reasoning in *Eisner* v. *Macomber*, 252 U. S. 189. The total amount excluded from the surplus representing the amount of the stock dividend is in excess of the distribution of April 16, 1920.

The next issue is as to the gain or loss realized by Ida J. Megeath upon the exchange in 1920 of 786 shares of the capital stock of the Sheridan Coal Co. for a like number of shares of the capital stock of the Megeath Coal Co. Of the 786 shares exchanged 40 were acquired by gift prior to March 1, 1913, 100 by gift in 1916, and 646 by gift in 1917. (*Towne* v. *McElligott*, 274 Fed. 960, 963.) The 646 shares last mentioned were part of 2,500 shares acquired by gift in 1917. On a total of 2,640 shares the petitioner received stock dividends in 1917 and 1918 of 1,056 shares. The 786 shares of the Megeath Coal Co. which the petitioner received upon the exchange were sold by her in the same year for a price equivalent to $135 per share; and the parties agree that for the purpose of the determination of the gain or loss upon the exchange the shares of the Megeath Coal Co. are to be valued at $135 per share.

For the purpose of determining gain or loss upon the exchange of property, the value of the property received in exchange, or selling price, is to be compared with the cost of the property exchanged, or, in the event that the property was acquired prior to March 1, 1913, with its value on that date plus the cost of subsequent additions. In no case will the gain exceed the excess of the selling price over the

March 1, 1913, value plus the cost of subsequent additions. It is upon this basis that the Commissioner has determined that the petitioner realized a profit of $49,967.15 upon the exchange, he having assigned to the 40 shares acquired in 1908 a value at March 1, 1913, of $100 per share, and the same value to the other shares sold, at the time they were acquired in 1916 and 1917, with proper adjustment on account of stock dividends. In other words, the Commissioner's determination is that the petitioner realized the maximum profit upon the exchange, to wit, the excess of the selling price over the March 1, 1913, value plus the cost of subsequent additions. The petitioner contends that she sustained a loss upon the exchange, but whether that be true or not we are unable to determine, since the evidence is insufficient upon which to base a finding of the value at the date of acquisition of the 40 shares acquired by gift in 1908. Therefore, any relief which we may afford the petitioner from the Commissioner's determination must necessarily be limited to the extent that we find the Commissioner's determination of gain exceeds the difference between the selling price, and what we find to be the March 1, 1913, value of the 40 shares acquired in 1908 plus the cost, or fair market value at the date of acquisition, of the other shares sold which were acquired in 1916 and 1917. All of the shares sold by the petitioner were acquired by gift; hence, in addition to determining the value at March 1, 1913, of the 40 shares acquired in 1908, it is necessary to determine the fair market value at the date of acquisition of the 100 shares acquired in 1916 and the 646 shares out of a total of 2,500 acquired in 1917.

So far as the record discloses there were no sales of stock of the Sheridan Coal Co. at or about the dates in question. The company is a close corporation. Its stock is not listed on any exchange and transactions involving the transfer thereof are infrequent. The common stock had a par value of $100 per share. If a valuation is to be made it must be through a consideration of book values and earnings. For the five-year period 1909 to 1913 the average earnings, after deducting dividends paid on preferred stock, were $90,567.07, which represents earnings of $9.06 per share on the common stock. The earnings for the year 1913, after deducting the dividend paid on the preferred stock, were $44,892.53, or $4.49 per share. Based on the actual surplus at March 1, 1913, as we have previously found it to have been, the book value of the stock was $135.42. Beginning with the year 1909 and continuing to 1915 there was a steady recession in the earnings of the company, the low level being reached in the year 1914, when the earnings amounted to but $14,789.38, which, after the deduction of the dividend paid on the preferred stock, represented a return of approximately 31 cents per share. In 1915 the

earnings increased to $60,992.01 and in 1916 they amounted to $227,443.47. For the five-year period 1912 to 1916 the average earnings, after deducting dividends paid on the preferred stock, amounted to $73,121.59, or $7.31 per share. The earnings for the year 1916, after deducting the dividend on the preferred, were $215,743.47, or $21.57 per share. The book value of the stock in December, 1916, was $170.04 per share, after adjustments made by the Commissioner. For the five-year period 1913 to 1917 the average earnings, after deducting dividends on the preferred stock, were $165,832.50, or $16.58 per share. The earnings for the year 1917, after deducting dividends on the preferred, were $516,215.12, or $51.62 per share. In that year all of the outstanding preferred stock was retired without any increase in the bonded indebtedness or temporary obligations. The book value of the stock on August 28, 1917, was approximately $199.81 per share. The earnings for the next three years, 1918 to 1920, averaged approximately $290,000 per annum. Based on the foregoing, it is our opinion that the 40 shares owned by the petitioner on March 1, 1913, had a fair market value at that date of $100 per share; that the 100 shares acquired by gift in December, 1916, had a fair market value at the date of acquisition of $130 per share; and that the 2,500 shares, of which 646 shares formed a part of the transaction under consideration, acquired in August, 1917, had a fair market value at the date of acquisition of $155 per share. Adopting the principles laid down in the cases of *Miles* v. *Safe Deposit & Trust Co.*, 259 U. S. 247; and *Towne* v. *McElligott, supra*, and in the *Appeal of D. W. Cowden*, 3 B. T. A. 816, for determining the basis for computing the gain or loss upon the sale of stock upon which stock dividends have been distributed, we find that the bases for the determination of the gain resulting from the transaction under consideration are as follows: For the 40 shares held at March 1, 1913, $71.4286 per share; for the 100 shares acquired in 1916, $92.8571 per share; and for the 2,500 shares acquired in 1917, $110.7143. The maximum taxable profit resulting to the petitioner computed on these bases is $22,445.71.

The 722 shares of stock of the Sheridan Coal Co. sold by S. A. Megeath in 1919 were acquired by that petitioner prior to March 1, 1913. Applying the basis adopted in the case of Ida J. Megeath, $71.4286 per share, the maximum taxable profit resulting to this petitioner upon the transaction in question is $20,713.55.

The additional question involved in the appeal of George W. Megeath is the deductibility of two items, one of $5,000 and one of $6,000, claimed as traveling expenses for the year 1921. The facts with respect to the trip to Europe are sufficiently set forth in our findings of fact. Upon them we find that the petitioner is entitled to deduct the sum of $1,666.67 for traveling expenses in

connection with his trip to Europe. No part of the expense incident to the transportation of his wife or nurse to Europe may be allowed as deductions in computing taxable net income, since they are of a personal nature. The amount of $6,000 is claimed as expenses of the trip to California on business for the Sheridan Coal Co. There is no evidence upon which we can base a finding as to what part of this amount represents expenses incurred in connection with the business, and what portion thereof is in the nature of personal expenses. The Commissioner's disallowance of this item must be approved.

> *Judgment will be entered on 15 days' notice, under Rule 50.*